## 12176

COLUMBIA GASLIGHT COMPANY v. MOBLEY, COUNTY
TREASURER

PARR SHOALS POWER COMPANY v. SAME

(137 S. E., 211)

1. STATUTES—STATUTE AUTHORIZING SUITS FOR RECOVERY OF TAXES
   PAID UNDER PROTEST SHOULD BE LIBERALLY CONSTRUED IF NECESSARY
   TO REACH AND DECIDE MERITS (CIV. CODE 1922, § 512).—Civ. Code
   1922, § 512, authorizing suits against County Treasurer for recov-
   ery of taxes paid under protest, being a remedial statute, should
   be liberally construed if such construction is necessary to reach
   and decide the merits.

2. TAXATION—ACTION TO RECOVER ASSESSMENT FOR SHARE OF RAILROAD
   COMMISSION EXPENSES HELD WITHIN STATUTE AUTHORIZING SUCH
   SUITS AGAINST COUNTY TREASURER (LAWS 1922, p. 956, § 7, CIV.
   CODE 1922, §§ 512, 4810).—Suit to recover assessment under Act
   March 6, 1922 (Laws 1922, p. 956), § 7, and Civ. Code 1922, §
   4810, as *pro rata* share of expenses of Railroad Commission, *held*
   within ordinary and generally accepted meaning of Civ. Code 1922,
   § 512, authorizing such suit against County Treasurer in case of
   State as well as county taxes.

3. TAXATION—"TAX" IS PECUNIARY BURDEN IMPOSED FOR SUPPORT OF
   GOVERNMENT AND IS NOT A DEBT.—A "tax" is a pecuniary burden
   imposed for the support of the government and is not a debt, and
   is not contractual, being involuntary on the part of the subject.

4. TAXATION—ANY GOVERMENTAL CHARGE FOR RAISING REVENUE IS A
   "TAX."—Any Govermental charge imposed for raising revenue is a
   "tax," regardless of name by which it is called.

5. TAXATION—LESSOR OF GAS MANUFACTURING PLANT AND DISTRIBUT-
   ING SYSTEM HELD NOT CORPORATION OR PUBLIC UTILITY WITHIN
   LAW AUTHORIZING ASSESSMENT FOR RAILROAD COMMISSION EXPENSES
   (LAWS 1922, P. 938, AND P. 956, § 7; CONST. ART. 9, § 14).—Lessor
   of real and personal property, consisting of gas manufacturing
   plant and distributing system, *held* not a corporation, nor public
   utility under jurisdiction of railroad commissioners within Laws
   1922, p. 956, § 7, authorizing assessment for *pro rata* share of ex-
   penses of railroad commission, when construed together with Laws
   1922, p. 938, relative to the jurisdiction of railroad commission,
   which was not defined by Const. art. 9, § 14, creating the com-
   mission.

NOTE: "Tax" as debt, see 26 R. C. L., 25; 4 R. C. L. Supp., 1635;
5 R. C. L. Supp., 1380; 6 R. C. L. Supp., 1524.

"Tax" defined, see 26 R. C. L., 13; 1 R. C. L. Supp., 1457; 1 R.
C. L. Supp., 1634; 5 R. C. L. Supp., 1379; 6 R. C. L. Supp., 1524.

6. STATUTES—SECTIONS OF SAME GENERAL STATUTE, OR SEPARATE STATUTES RELATING TO SAME SUBJECT-MATTER MUST BE CONSTRUED TOGETHER AND EFFECT GIVEN TO EACH.—Sections which are a part of the same general statutory law must be construed together and effect given to each, including two separate statutes relating to the same subject-matter, particularly so when two statutes are adopted at the same session.

7. TAXATION—INACTIVE LESSOR CORPORATION CANNOT BE CONSIDERED AS ENGAGED IN BUSINESS UNDER EXCISE TAX LAW.—An inactive lessor corporation, which does nothing except to hold title to property and collect rents, cannot be considered as engaged in business under the excise tax law.

8. STATUTES—DOUBT AS TO CONSTRUCTION AND INTERPRETATION OF TAX STATUTES MUST BE RESOLVED AGAINST GOVERNMENT.—Where substantial doubt exists as to construction and interpretation of statute with respect to interpretation and enforcement of tax statute, doubt must be resolved against government.

9. STATUTES—ANY SUBSTANTIAL DOUBT AS TO WHETHER PARTICULAR PERSON IS WITHIN TAX LAW MUST BE RESOLVED IN HIS FAVOR.— Where language relied on to bring particular person within tax law is ambiguous, or is reasonably susceptible of an interpretation that will exclude such person, the person will be excluded, since any substantial doubt must be resolved in his favor.

Before FEATHERSTONE, J., Richland, October, 1925. Affirmed.

Separate actions by the Columbia Gaslight Company and by the Parr Shoals Power Company against W. M. Mobley, Treasurer of Richland county. From an order overruling a demurrer in each case, defendant appeals.

The decree and order of the Circuit Judge in each case, which were affirmed by the Supreme Court on appeal, are as follows:

IN GASLIGHT COMPANY CASE

Plaintiff is a South Carolina corporation owning real and personal property in Richland county, consisting of a gas manufacturing plant and distributing system. By a lease executed June 30, 1911, and a supplemental lease executed May 1, 1920, plaintiff leased all of its property to the Columbia Railway, Gas & Electric Company (hereinafter spoken of as the "Columbia Company"), for a term expiring in 1941, and since June 30, 1911, plaintiff has been

an inactive and nonoperating lessor corporation, and has not engaged in furnishing or supplying in any manner any commodity or service to the public, or any portion thereof, for compensation or otherwise.

These are ultimate facts alleged in the complaint and admittted by the demurrer, on which the matter comes before me for disposition.

Proceeding under Section 7 of Act No. 533, approved March 6, 1922, and Section 4810 of the Code of 1922, the Comptroller General assessed $47.39 against plaintiff as its *pro rata* share of the expenses of the railroad commission of South Carolina for the year 1923, and, "under the order and direction of the Comptroller General," this amount was charged on defendant's books against plaintiff to "be collected by" defendant "in the manner provided by law for the collection of taxes from such corporation." (Quotations are from Section 4810 of the Code.)

Plaintiff paid the $47.39 to defendant under protest, and brings this action to recoup such payment, under Section 512 of the Code of 1922, Vol. 3.

The first ground of demurrer is that this money has gone into the state treasury, so that the state is the real party in interest, and that the suit is in effect one against the state without its consent. But Section 512 authorizes such a suit against the county treasurer in the case of state as well as county taxes, and supplies the state's consent to be sued, provided the payment in question is a "tax" within the meaning of this section. The second ground of the demurrer makes the point that it is not such a " tax," so that the first two grounds turn on this single question.

In *Railway v. Gibbes,* 24 S. C., 60, a suit was brought under the same statute (Section 512) to recoup a similar assessment on the ground that the statute imposing the assessment (Section 4810) was unconstitutional. The point that the assessment was not a tax within Section 512 was not specifically referred to as the discussion, both on circuit and on appeal, was limited to the merits, the constitu-

tional question. The fact, however, that neither the learned Attorney General nor the Court questioned the propriety of the remedy, and that the case was disposed of on its merits, makes it at least persuasive authority against the defendant's contention here. I will, however, briefly consider this contention as a *de novo* proposition.

It would seem to be an exceedingly inequitable situation if plaintiff cannot use the simple remedy provided by Section 512 to secure a judicial determination of the question whether it is a "public utility" within the act of 1922, and liable as such for this assessment. The well-defined policy of our statutes (see, also, Section 513) is to require payment under protest and suit to recover rather than an injunction proceeding. The benefits to the state are self-evident. The Court should be reluctant to hold that a party who has *bona fide* paid his money in reliance on this remedy cannot thereby secure a decision as to the legality of such payment. This is merely a question of remedy, and the remedial statute should be liberally construed in a case of this character, if such construction be necessary to reach and decide the merits. 25 R. C. L., p. 1076, § 298; *Trammell v. Mfg. Co.,* 102 S. C., 483; 86 S. E., 1057.

In my opinion, however, the suit is within the ordinary and generally accepted meaning of the language used in Section 512. This section applies to all cases in which any taxes are charged upon the county treasurer's books and collected by him. The $47.39 was so charged and so paid. "A tax is 'a pecuniary burden imposed for the support of the government'—'a demand of sovereignty.' A tax is not a debt. It is not contractual. It is involuntary on the part of the subject." *Columbia Ry., Gas & Electric Co. v. Carter,* 127 S. C., 473; 121 S. E., 377. So was this $47.39. If it was not a tax what was it?

It has all the attributes and passes all the tests of a "tax." It was assessed to raise revenue for a "public purpose"—the support of an agency of the admin-

istrative department of our government. It is part of the $39,889.38 appropriated by Section 40 of the Appropriation Act of 1923 (33 Stat., 277). Any govermental charge imposed for the purpose of raising revenue is a tax regardless of the name by which it is called. *State v. Columbia,* 6 S. C., 1. *Teleg. Co. v. Winnsboro,* 71 S. C., 231; 50 S. E., 870. The charge, irrespective of what it may be called, is "manifestly an excise tax, laid under the benefit theory of taxation upon the public service corporation named for the privilege of exercising their corporate franchise and carrying on their business within the state." *Columbia Ry., Gas & Electric Co. v. Jones,* 119 S. C., 480, 494; 112 S. E., 267. The measure for the tax is the expense of the railroad commission prorated amongst the companies liable in proportion to their gross receipts.

Section 7 of Act No. 533 of 1922 is silent as to the name of the burden. But Section 4810 speaks of it both as "an assessment" and as a "tax." It requires "the assessment" to be charged up and collected in the manner provided by law for the collection of taxes, and then remitted to the state treasurer "in like manner as other taxes collected by them for the state."

I have no hesitation in reaching the conclusion that the suit is properly brought.

The question going to the merits is whether plaintiff is a "corporation or public utility under the jurisdiction of the railroad commissioners as provided for in this act," within Section 7 of Act No. 533 of 1922. If it is such a corporation or public utility, then it is subject to this assessment. If it is not, then the assessment has been wrongfully made against and collected from it.

Section 1 of Act No. 533 of 1922 establishes the railroad commission, but provides that its powers over public utilities shall be prescribed by law. Section 6 vests in the commission power and jurisdiction to regulate the rates and service "of every public utility in this state," and to fix just and reasonable standards, etc., to be observed and followed

by "every public utility in this state." This section, however, does not in anywise define what are "public utilities" within the meaning of this term as used in this statute, and the statute is elsewhere entirely silent as to what corporations this classification includes.

While the railroad commission is created by Section 14 of Article 9 of our Constitution, the Constitution does not undertake to specify its jurisdiction, but contemplates that this is to be fixed by statute. The history of the statutory jurisdiction of the commission shows that the Legislature has never seen fit to extend its powers over all corporations and persons that could constitutionally be subjected to its control—that is, over all public utilities. Prior to 1922 the railroad commission had been given jurisdiction over steamboat lines, steam railroads, interurban electric railroads, telephone, telegraph, and express companies, but other public utilities, such as urban electric railroads, gas companies, electric and power companies, were not within its control. The state did not (prior to 1922) exercise any supervisory control over the rates or service of urban electric railroads. A statute approved in 1910 created the Public Service Commission, which was entirely separate and distinct from the railroad commission, and vested in it supervisory control over the rates and service of gas and electric companies. See 26 Stat., 564, codified as Sections 922–925 of the Code of 1912. If we consider only Act No. 533, approved March 6, 1922, the matter of the jurisdiction of the railroad commission would be in great confusion, because this act does not specify what control it undertakes to vest in the railroad commission, and nowhere says what it means by "every public utility in this state."

There is, however, another statute adopted at the same session which clarifies the situation. This is Act No. 525, found at page 938 of the statutes of 1922. Although this act was not approved until March 24th, its number and location in the statute book clearly indicate that in passing

Act No. 533 the Legislature had in mind that Act No. 525 was pending, and knew that it was to be a part of the statute law on this subject-matter. We must, therefore, look to Act No. 525 and construe Act No. 533 in connection with it, not only because both are a part of the general statute law on the same subject matter, but also because the peculiar circumstances of their adoption make this necessary to correctly interpret the legislative intention. Act No. 533 is the mere skeleton. Act No. 525 supplies the flesh and blood.

Sections which are part of the same general statutory law (Code) must be construed together and effect given to each. *State v. Fidelity & Deposit Co.,* 114 S. C., 511; 104 S. E., 182. The same rule applies to two separate statutes relating to the same subject-matter. *Gordon v. Bell,* 116 S. C., 466; 108 S. E., 186. *State v. Sanders,* 118 S. C., 498; 110 S. E., 808. The rule applies with peculiar force when the two statutes were adopted at the same session. *Paul v. Carter,* 153 N. C., 26; 68 S. E., 905.

Section 1 of Act No. 525 supplies the definition of "public utility," and shows that this "includes every corporation and person furnishing or supplying in any manner gas, electricity, heat, electric power, water and street railway service, or any of them, to the public, or any portion thereof, for compensation." And, while the term "public or any portion thereof" is given a very broad definition, it is stipulated that the corporation must perform the service or deliver the commodity before it is to be considered a public utility subject to the jurisdiction and regulation of the railroad commission..

It is, therefore, perfectly apparent that the assessment should be made by the Comptroller General under Act No. 533 on such corporations as are public utilities within the definition of Act No. 525. Plaintiff does not perform a service for or deliver a commodity to any one. It is a mere

inactive and nonoperating lessor corporation. It has furnished nothing and delivered nothing to any one since it delivered possession of its property to its lessor, the Columbia Company, on June 30, 1911, and May 1, 1920, pursuant to its leases of those dates. "The lessee operates the leased property as his own, and business done by the lessee could not be 'business done in connection' with the lessor, whose only interest in the business is a creditor's (right) to enforce his claim, secured or unsecured, for rent." *Columbia Ry., Gas & Electric Co. v. Jones,* 119 S. C., 480, 497; 112 S. E., 267, 273.

The established rule is that an inactive lessor corporation which does nothing except to hold title to property and collect the rent under the lease, cannot be considered as "engaged in business" under an excise tax law. *McCoach v. Minehill & S. H. R. Co.,* 228 U. S., 295; 33 S. Ct., 419; 57 L. Ed., 842. See, also, *U. S. v. Whitridge,* 231 U. S., 144; 34 S. Ct., 24; 58 L. Ed., 159.

The complaint here merely alleges that plaintiff is a corporation. It does not appear whether plaintiff is even authorized to engage in business as a public utility. This, however, is entirely immaterial, as the test of the commission's jurisdiction is not what this corporation is authorized to do, but what it actually does. It was clearly the legislative intent to place the burden of the expenses of the commission on the corporations subjected to its control. The theory of a supervisory control by the commission contemplates not only the protection of the public against rates too high and service too poor, but also the protection of the utility against unreasonable public demands for rates too low and service too fine. Theoretically, at least, therefore, such supervisory control is a benefit to the corporation subjected thereto, and it can reasonably be required to pay the expenses incurred by the state in exercising this particular control. In the case of plaintiff, however, it in nowise comes in contact with the public and does nothing over which the state should

exercise any supervision, either for the protection of the public or for the benefit of plaintiff. All that it does is to hold the title to its property and collect the rent paid it by the Columbia Company according to the terms of its leases. So far as plaintiff's property is concerned, it is the Columbia Company that is the public utility, that furnishes gas service to the public, and as such is subject to the control of the railroad commission.

This conclusion is fortified by "the established rule 8, 9 that, where substantial doubt exists as to the construction and interpretation of legislative action with respect to the enactment and enforcement of tax statutes, the doubt must be resolved against the government." *Columbia Ry., Gas & Electric Co. v. Carter,* 127 S. C., at page 482; 121 S. E., 380. Where the language relied upon to bring a particular person within a tax law is ambiguous, or is reasonably susceptible of an interpertation that will exclude such person, then the person shall be excluded, any substantial doubt being resolved in his favor. *Fuller v. S. C. Tax Commission,* 128 S. C., 14; 121 S. E., 478.

It is therefore ordered that the demurer herein be and the same is hereby overruled. Defendant may answer within twenty days if so advised.

### IN POWER COMPANY CASE

The demurrer herein was heard by me in connection with the one in the action by the Columbia Gaslight Company against the same defendant. The complaints and demurrers in the two cases make identical issues, and for the reasons and upon the grounds set forth in my order in the *Columbia Gaslight Company case* this demurrer must be overruled.

In the case of *Columbia Railway, Gas & Electric Co. v. Jones,* 119 S. C., 480; 112 S. E., 267, the Supreme Court was called upon to consider the legal relation between plaintiff and the Columbia Company (Columbia Railway, Gas &

Electric Company) resulting from the so-called "operating agreement" of August, 1912. The Court there held that the controlling relation was not that of principal and agent or trustee and *cestui que* trust, but that of lessor and lessee, plantiff being the landlord and the Columbia Company the tenant, the "operating agreement" being nothing but a lease (119 S. C., 489, 494; 112 S. E., 267), and that all the plaintiff (lessor) does is to collect its rent (page 497 [112 S. E., 267]). · This strongly supports the conclusion I have reached that plaintiff cannot be considered as a public utility within Acts No. 525 and No. 533 of 1922.

It is therefore ordered that the demurrer herein be and the same is hereby overruled. Defendant is allowed 20 days to answer if so advised.

*Messrs. John M. Daniel and Cordie Page,* for appellant, cite: *The state necessary party to the action:* 78 S. C., 211; 77 S. C., 12. *Distinction between general taxes and special assessments:* 137 S. C., 496; 78 S. C., 211; Sec. 512. Vol. 3, Code, *does not supply consent to sue here.* Sec. 6, 32 Stat., 956, *vests power over public utilities in Railroad Commission.* *"Public utility"*: 127 Pac., 639–40; S. C., 32 Stat., 938. *Acceptance of charter by corporation assumes responsibilities incident thereto:* 25 S. C., 216; 41 S. C., 415; 43 S. C., 197; 63 S. C., 370; 73 S. C., 572; 74 S. C., 332; 75 S. C., 169; 84 S. C.,190; 89 S. C., 287. *Writ of error dismissed:* 223 U. S., 740; 56 L. Ed., 637; 32 Sup. Ct. Rep. 531; 89 S. C., 408; 93 S. C., 354; 108 S. C., 131. *No power to modify responsibility unless right reserved:* 4 Wheat, 700 (17 U. S., bk. 4, L. Ed., 674), 13 Wall, 212 (80 U. S., bk. 20, L. Ed., 552), 29 L. Ed., 636, 27 S. C., 385, affirmed by 142 U. S., 386; 35 L. Ed., 1051. *Leasing of property does not change relation of original company to public:* 84 S. C., 455. *Contract made to avoid taxes void:* Sec. 530, Vol. 3, Code 1922. *Nonuse of charter forfeits same:* Sec. 4325 Code.

*Mr. J. B. S. Lyles,* for respondent.

March 11, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This Court is entirely satisfied with the reasoning and conclusion of his Honor, the Circuit Judge, and his decree and order in each of the above stated cases, appealed from, is affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE RAMAGE, concur.