14458

EPWORTH ORPHANAGE v. WILSON, COUNTY TREASURER, ET AL.

SAME v. TOWN OF MANNING

(193 S. E., 644)

244

*Mr. Charlton DuRant,* for appellant cites:

*Mr. John G. Dinkins,* for respondents, Janie M. Wilson, Treasurer and J. E. Gamble, Sheriff, cites:

*Mr. W. C. Davis,* for respondent, Town of Manning, cites:

November 3, 1937.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The General Assembly of this State, by an Act approved February 28, 1896 (22 Stats. at Large, p. 319), incorporated the "Epworth Orphanage of the South Carolina Conference" (of the Methodist Episcopal Church, South) and therein prescribed the "Powers and Duties of the Board of Managers and Trustees Thereof."

The title of the Act sufficiently declares the nature of the institution. The main buildings of the orphanage are situated in Richland County near the City of Columbia, but it had property in other sections of the State, including the town of Manning and the county of Clarendon. The landed property so situated in said town and county was assessed for taxes for the year 1935 and placed upon the books of the county treasurer for collection. When they were not paid within the lawful period for such payment, the county treasurer issued execution commanding the sheriff to levy upon and sell so much of said property as was necessary to pay the taxes due, and costs of collection. The sheriff levied upon certain of the property and advertised it for sale. Thereupon the taxes were paid under protest and action brought to recover them.

The complaint states that plaintiff is an eleemosynary institution chartered by special statute approved February 28, 1896; that plaintiff does not operate for profit, but conducts an orphanage as a charitable institution; that it invested certain of its endowment funds in mortgages on real estate and, owing to the depression, was forced to foreclose and buy in the property herein involved; that the said property was and is exempt from taxation under plaintiff's charter and the laws of the State.

The above-stated facts relative to taxation, exemption, payment under protest, and action for recovery, apply also to the action against the town of Manning. The two cases were heard together on circuit, and the appeals are heard here together.

In the county case there was a demurrer to the complaint on the following grounds, viz.: That the taxes were paid to the sheriff and not to the treasurer and there is no provision of law in such case for the bringing of this action. That the plaintiff's property described in the complaint is not exempt from taxation under Article 3, Section 34, Subdivision 3, of the Constitution of 1895, which prohibits the

passing of a special law such as is referred to in the complaint. That the property described in the complaint is not such as is exempted from State and county taxes under Article 10, Paragraph 4, of the Constitution of 1895, which limits such exemption to buildings and premises actually occupied by such institutions as is therein named. That the complaint fails to state that the income from the property therein described was insufficient to pay said taxes, and hence states no cause of action under the provisions of Act No. 839 of the Act of April 6, 1932 (37 St. at Large, p. 1457) ; the said Act having repealed or changed the charter alluded to in the complaint.

The town demurred to the complaint on the grounds that it stated no cause of action for that: The plaintiff was improperly and illegally incorporated and chartered, the Act of 1896 being prohibited by Article 3, Section 34, Subdivisions 3 and 9, of the Constitution. That Section 6 of the Act of 1896, purporting to exempt plaintiff's property from taxation is in conflict with Article 10, Section 4, of the Constitution of 1895, which provides that property of associations and societies, although connected with charitable institutions, shall not be exempt from taxation, etc. That if it be held that the Act of 1896 is constitutional as to plaintiff's incorporation and charter, and as to exemption of all of its property, then the charter has been changed and amended by the Acts of the General Assembly of 1932, 1935, and 1936, and it does not appear on the face of the complaint that the income from the property is insufficient to pay the taxes assessed against it, so as to bring plaintiff within the terms of the said Acts.

The cases were heard by the Hon. C. C. Featherstone, Circuit Judge, who filed his decree March 25, 1937. He concludes with these words :

"And Orphanages are, of course, asylums for indigent children.

"It seems to me, therefore, that the Court is bound to hold that the buildings and premises actually occupied by an Orphanage are exempt under the Constitution, but beyond that there is no Constitutional Exemption, except for a period of five years as provided by Acts of 1932 and 1936.

"I therefore conclude, as already indicated, that there is a constitutional exemption as to lands of Orphanages which are actually occupied by them; that the Acts of 1932 and 1936 are valid and good and not obnoxious to the Constitution.

"It follows then in order to exempt the lands from taxation the plaintiff must allege and prove that the income from the lands was not sufficient to pay the taxes.

"The demurrer is sustained and the complaint is dismissed solely upon this ground. All the other grounds are overruled.

"If the failure to make the said allegations had been due to oversight, leave to amend would be granted, but it was frankly stated that the income from the lands was sufficient to pay the taxes."

In a short order, his Honor sustained the demurrer in the case of the same plaintiff against town of Manning on the ground that the complaint fails to allege that the income from the property is not sufficient to pay the taxes. All other grounds of demurrer are overruled.

The plaintiff appeals from both orders on nine exceptions, which it elects to treat, in counsel's brief, as making seven questions.

Respondents in the county case ask that the decree in its case be sustained upon the additional grounds set up in the first, second, and third grounds of their demurrer.

In the town case the respondent asks that the order relating to it be sustained upon the additional grounds set up in its first and second grounds of demurrer.

Both respondents ask that the orders in both cases be sustained upon the additional grounds:

1. That the Act of 1896 is violative of Article 3, Section 17, Const. 1895.

2. That the said Act is violative of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and to Article 1, Section 5, Const. S. C., 1895.

Despite the declaration of the Circuit Judge that the demurrers in both cases are sustained on the sole ground that the complaints fail to state that the income from the taxed property is not sufficient to pay the taxes, and that all other grounds of demurrer are overruled, we think that the decree does, in effect, decide the cardinal constitutional questions made by the pleadings. Be that as it may, we will consider all the issues made by the exceptions; we shall not treat them separately, nor in chronological order, but all of them will be in effect disposed of.

It may be well at the outset to dispose of those exceptions which challenge the validity of the charter granted by the Act of 1896, 22 St. at Large, p. 319, which incorporates Epworth Orphanage.

The specific charge is made by demurrer to the complaints that the plaintiff (appellant here) was "improperly and illegally chartered"; the Act of 1896, chartering it,—being absolutely prohibited under Article 3, Section 34, Subdivisions 3 and 9, of the Constitution and for this reason plaintiff has no capacity to sue.

The provisions of the Constitution relied on are those relating to the prohibition of the passing of special laws, relating to the subjects therein named, including:

"III. To incorporate educational, religious, charitable, social, manufacturing or banking institutions, not under the control of the State, or amend or extend the charters thereof" and

"IX. In all other cases, where a general law can be made applicable, no special law shall be enacted."

Pertinent to the question now being discussed is Section 2 of Article 9 of the Constitution, viz.:

"*Charter of Incorporation.*—No charter of incorporation shall be granted, changed or amended by special law, except in the case of such charitable, educational, penal or reformatory corporations as may be under the control of the State, or may be provided for in this Constitution, but the General Assembly shall provide by general laws for changing or amending existing charters, and for the organization of all corporations hereafter to be created, and any such law so passed, as well as all charters now existing or hereafter created, shall be subject to future repeal or alteration:

"*Provided, That the General Assembly may by a two-thirds vote of each house on a concurrent resolution allow a Bill for a special charter to be introduced, and when so introduced may pass the same as other Bills.*" (Italics added.)

The respondents do not assert, nor attempt to prove, that the General Assembly, when it passed the Act of 1896, *supra*, did not comply with the requirements of the Constitution that it should have a concurrent resolution adopted by a two-thirds vote of each House authorizing the introduction of a bill to incorporate Epworth Orphanage. It is established law that one who attacks the constitutionality of an Act of the General Assembly must show it conclusively. Where the attack includes a matter of fact, the charge must be proved by him who makes it. It was incumbent upon respondent to show that the Legislature, when it passed this Act of incorporation of the plaintiff, did not have the authority of such concurrent resolution as the Constitution provides for it. This they have failed to do.

The presumption of the constitutionality of the Act is not overcome. "All statutes are presumed to be constitutional." *Scroggie v. Scarborough,* 162 S. C., 218, 160 S. E., 596, 602.

The attack on the validity of Section 6 of the Act of 1896 is that it violates the provisions of Article 10, Section 4, of the Constitution of 1895. Section 6 is in the following language: "That the property, money and estate and

rights of said corporation shall be exempt from all taxation by State or local laws for any purpose whatever."

Article 10, Section 4, of the Constitution of 1895 is as follows:

*"Property Exempt from Taxation.*—There shall be exempted from taxation all county, township and muncipal property used exclusively for public purposes and not for revenue, and the property of all schools, colleges and institutions of learning, all charitable institutions in the nature of asylums for the infirm, deaf and dumb, blind, idiotic and indigent persons, except where the profits of such institutions are applied to private uses; all public libraries, churches, parsonages and burying grounds, but property of associations and societies although connected with charitable objects shall not be exempt from State, county or municipal taxation; *Provided,* That as to real estate this exemption shall not extend beyond the buildings and premises actually occupied by such schools, colleges, institutions of learning, asylums, libraries, churches, parsonages and burial grounds, although connected with charitable objects."

Respondents argue that Section 6 of the Act of 1896, which seeks to exempt all the property of the plaintiff, is in violation of Article 3, Section 34, Subdivision 3, which prohibits the enactment of special or local laws.

The learned Circuit Judge, in his decree, has practically disposed of those questions affecting the constitutionality of the charter of the plaintiff, and its charter and statutory exemptions of its property from taxation. He says: "Orhpanages being 'charitable institutions, in the nature of asylums for * * * indigent * * * persons * * * we need go no further' as says the *White case* [*Chester County v. White Bros.,* 70 S. C., 433, 50 S. E., 28]."

We construe this utterance to mean that the Act of 1896 which incorporated Epworth, is not in violation of the Constitution.

He says further:

"We have only to ascertain that, if the Orphanage owns real estate, whether or not it is 'actually occupied' by such Orphanage. "If it is, then, the Legislature cannot tax it."

Plainly this language can only mean that the learned Judge concludes that the exemption sought to be made by Section 6 of the Act of 1896 is in violation of the constitutional prohibition of special and local laws.

He likewise holds that "Orphanages are, of course, asylums for indigent children," and that under the constitutional provisions pertaining to such institutions the plaintiff's property is exempt from taxation only as to that which is actually occupied by it. He holds that the Acts of 1932 and 1936 (Act April 6, 1932, 37 St. at Large, p. 1457; Act June 6, 1936, 39 St. at Large, p. 1652), are not obnoxious to the Constitution, but are "valid and good." This language is tantamount to saying that they alter or amend Section 6 of the Act of 1896, and that they alter and supersede the exceptions set forth in Section 2578 of the Code, subdivision (10), which is in these words: "All property belonging to institutions of purely public charity and used exclusively for the maintenance and support of such institutions."

Or else the language of the decree means to say that Epworth Orphanage comes within the class named in Section 2578 as "an institution of purely public charity," and that its property is exempt from taxation when occupied by it and is used exclusively for the maintenance and support of it.

No one who is cognizant of the great work of charity and humanitarianism which is done by the plaintiff can doubt that it is devoted to works of purely public charity. No private nor selfish interest detracts from the purity of the motives with which it pursues the charitable work to which it is devoted.

It cannot be denied that the Legislature has constitutional power to amend and alter chartered rights and privileges. When, therefore, that body passed the Acts of 1932 and 1935, it is only logical to conclude that the provisions embodied in Section 2578 of the Code of 1932 were in force and that it intended to supersede, alter and amend them.

The Act of 1932, approved April 6, 1932 (37 St. at Large, p. 1457), provides that the real estate "owned, now or hereafter, by orphanages and educational institutions in this State acquired by gift, devise, or under proceedings for the foreclosure of mortgages securing loans made by orphanages and educational institutions as an investment of their endowment funds, and other trust funds, until such real estate can be disposed of, be, and the same is hereby exempt from taxation, for a period of five years unless the income from such property during that period becomes sufficient to pay the taxes."

The Act of April 20, 1935, 39 St. at Large, p. 234, amended this Act in an immaterial particular.

The Act of 1936, page 1652 of the printed Acts for that year, approved June 6, 1936, after setting forth in an appropriate preamble the reasons, because of the depression, which has caused orphanages and the like character of institutions to acquire in fee real estate in which they had invested endowment and trust funds, re-enacts the provisions of the Act of 1932, with the addition of the words, "including taxes due at the time of foreclosure sale and now unpaid."

The complaints in the county and town cases did not allege that the income from the property involved in the two cases was not sufficient to pay the taxes. In fact, the circuit decree states that it was freely admitted that the income was sufficient to pay the taxes. For this reason, his Honor sustained this ground of demurrer in both cases and dismissed the complaints.

It is a further contention that the Circuit Judge ■ should have sustained the ground of demurrer in both cases to the effect that plaintiff paid its taxes under protest to the sheriff of the county and not to the treasurer, and there is no provision of law for bringing action to recover taxes so paid.

This contention seems to us the refinement of technicality.

Section 2846 of the Code provides that if a person against whom county, State, or other taxes may be charged on the books of the county treasurer, "and such treasurer shall claim the payment of the taxes so charged, or shall take any step or proceeding to collect the same, the person against whom such taxes are charged, or against whom such step or proceeding shall be taken, shall, if he conceives the same to be unjust or illegal for any cause, pay the said taxes notwithstanding, under protest,' etc.

Section 2830, Code 1932, provides that the county treasurer shall issue his execution for the collection of delinquent taxes. In the present instance, the treasurer issued execution and made the Sheriff his agent to enforce it.

Section 2846 specifically points out that the treasurer may take any step or proceeding for the collection of unpaid taxes and may issue execution for that purpose. In Clarendon County the treasurer issued the execution to the sheriff, who advertised the taxed property for sale; thereupon the taxpayer paid the taxes claimed under protest, to the sheriff, who paid the money to the treasurer. To whom else could the taxpayer make payment except to the person to whom the treasurer had issued execution, and who had advertised the property for sale?

In the case of *Columbia Gaslight Co. v. Mobley, Treas.,* 139 S. C., 107, 137 S. E., 211, 212, the Court said: "The well-defined policy of our statutes * * * is to require payment under protest and suit to recover rather than an injunction proceeding. * * * The Court should be reluctant to hold that a party who has *bona fide* paid his money

in reliance on this remedy cannot thereby secure a decision as to the legality of such payment. This is merely a question of remedy, and the remedial statute should be liberally construed in a case of this character, if such construction is necessary to reach and decide the merits."

It is held in the case of *Fourth Nat. Bank v. Greenville,* 91 S. C., 81, 74 S. E., 126, that the provisions of the statutes relating to the payment of taxes under protest, and the bringing of taxes under protest and the bringing suit to recover them, applies to city taxes as well as State and county taxes.

We think the decree and order of Judge Featherstone, as we have construed them, are in accord with the view we have herein expressed. Therefore, they are affirmed, and the appeals in both cases are dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.