## 9366

### VERMILLION v. WOMAN'S COLLEGE OF DUE WEST.

#### (88 S. E. 649.)

1. CHARITIES — LIABILITY OF CHARITABLE ORGANIZATION — CHARACTER—
EVIDENCE.—The mere fact that a statute incorporating "the Board
of Trustees of the Associate Reformed Presbyterian Synod,"
declared it to be a religious association engaged in the propagation
of the gospel, and that another statute amending the defendant col-
lege's charter placed it under the jurisdiction of the synod, was
insufficient to show that the college was a charitable institution.

2. TRIAL—NONSUIT—WHEN GRANTED.—A nonsuit may be granted when
plaintiff's evidence establishes a defense to the action, but the evi-
dence in support of the defense must be open to no other reasonable
inference than the truth of the essential elements of fact constitut-
ing the defense.

3. NEW TRIAL—WHEN GRANTED—INSUFFICIENCY OF EVIDENCE.—Plain-
tiff, who was nonsuited because of an alleged showing that the defend-
ant was a charitable organization and not liable, was entitled to
new trial where the showing made was actually insufficient.

4. CHARITIES — LIABILITIES OF CHARITABLE SOCIETIES — TORTS — PUBLIC
POLICY.—The rules excepting charitable societies from liability for
their torts rests on public policy, and not upon the relation of the
injured person to the charity so that it is immaterial whether the
injured person is an employee or invitee.

5. CHARITIES — LIABILITIES OF CHARITABLE SOCIETIES — TORTS — PUBLIC
POLICY.—The rule excepting charities from liability for their torts
is merely an exception to the rule of *respondeat superior,* itself
based on public policy; the injured persons having a remedy against
the actual wrongdoer.

Before SEASE, J., Abbeville, October, 1914.   Reversed.

Action by J. W. Vermillion, administrator, against the
Woman's College of Due West.   Judgment of nonsuit, and
plaintiff appeals.

FOOTNOTE.—As to liability of charitable institutions, see *Lindler* v.
*Hospital,* 98 S. C. 25, 81 S. E. 512, and notes in 7 L. R. A. (N. S.)
481, 10 L. R. A. (N. S.) 74, 22 L. R. A. (N. S.) 486, 32 L. R. A. (N.
S.) 62, 42 L. R. A. (N. S.) 1144, 52 L. R. A. (N. S.) 505, 4 A. & E.
Ann. Cas. 104, 11 A. & E. Ann. Cas. 160, — A. & E. Ann. Cas. 1913e,
1129.   What are charitable institutions within rule exempting from lia-
bility for negligence, see notes in 2 L. R. A. (N. S.) 556.

*Messrs. Cothran, Dean & Cothran,* for appellant, distinguish this case from 98 S. C. 5, and cite: 109 Fed. 294; 65 L. R. A. 372; 31 L. R. A. 224; 7 L. R. A. (N. S.) 496; 22 L. R. A. (N. S.) 486; 31 L. R. A. 224; 179 U. S. 136; 120 Fed. 392; 31 L. R. A. 224; 23 L. R. A. 581; 2 L. R. A. (N. S.) 556. *Liability for corporate negligence:* 120 N. Y. 24; 10 L. R. A. (N. S.) 85; 122 N. W. 631; 10 L. R. A. (N. S.) 74; 25 L. R. A. 602; 96 N. E. 406; 32 L. R. A. (N. S.) 62; Cooley Torts 604; 102 U. S. 577; 18 S. C. 282; 46 L. R. A. (N. S.) 548; 19 S. C. 185.

*Mr. Wm. N. Graydon,* also for appellant: *Rule governing nonsuit:* 41 S. C. 158; 45 S. C. 104; 48 S. C. 190; 62 S. C. 179. *Facts not to be assumed:* 43 S. C. 26. *Case at bar:* Cooley Torts 604-607; 102 U. S. 577. *Corporate liability:* 51 L. R. A. (N. S.) 1025; 10 L. R. A. (N. S.) 74; 65 L. R. A. 372; 221 U. S. 636.

*Messrs. Grier, Park & Nicholson* and *Wm. P. Greene,* for respondent, submit: *Defendant is a charitable corporation:* 19 Stats. 938; 26 Stats. 1039. *Powers of corporation:* Civil Code 1912, sec. 2865; 17 Stats. 446; 24 Stats. 1034; Acts of 1913 277. *The Court should take judicial notice of the charitable character of the corporation:* 53 Pa. 292, 297; 66 Pac. 148; 26 Wash. 31; 176 Mass. 192; 59 Vt. 202; 25 Atl. 55, 56; 50 Pa. 565; 28 Pa. 23, 35; 35 Atl. 375; 42 Ill. 425, 430; 3 Stephens Comm. 229; 25 Ohio St. 229, 243; 107 U. S. 163; 46 Atl. 178; 92 Mass. 169; 80 Va. 718, 762; 46 Pac. 463, 466; 96 Mass. 563; 9 Barber (N. Y.) 324, 334; 110 Ill. 223; 23 L. R. A. 200; 105 Fed. 886; 117 Fed. 44; 54 C. C. A. 430; 135 Pac. 235; 68 Atl. 317; 93 Pac. 870. *Liability of charitable institutions:* 98 S. C. 25; 218 Ill. 381; 2 L. R. A. (N. S.) 556; 102 S. W. 351; 60. N. W. 42; 12 Clark & F. 507; 120 Mass. 432; 109 Mass. 558; 63 Md. 20; 9 C. C. A. 14; 60 Fed. 365.

April 4, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

In April, 1914, defendant gave a musical entertainment in its new auditorium to which the public was invited on payment of an admission fee of 50 cents each. While the entertainment was in progress, the balcony fell on plaintiff's intestate, and he sustained injuries from which he subsequently died.

Plaintiff alleged and introduced evidence tending to prove that the balcony fell because of negligence in its construction. Defendant denied negligence, but claimed exemption from liability, notwithstanding negligence should be proved, on the ground that it is a public charity; and, on that ground, a nonsuit was ordered.

Defendant offered no evidence to prove its relation to the public, but relied upon certain statutes relative to its incorporation and association with the Associate Reformed Presbyterian Synod to show that it is a public charity.

1   Careful consideration of these statutes shows that, while they warrant an inference that defendant is a public charity, they do not prove that fact beyond dispute, for they are not inconsistent with the view that defendant is a private corporation conducted for gain. Defendant's attorneys practically concede that the acts incorporating defendant and those amending and extending its charter fail to show conclusively that it is a public charity, and they seek to supply the deficiency of proof by reference to the act which incorporates "the Board of Trustees of the Associate Reformed Presbyterian Synod," which declares the synod to be "a religious association engaged in the propagation of the gospel;" and, coupling this statutory declaration of the character of the synod as a public charity, with the authority vested in the synod by the act amending defendant's charter, which puts the college under the jurisdiction of the synod and authorizes the synod to elect its trustees,

the Court is asked to infer that defendant is of the same character as the synod.   That may be so, but it is not the only inference of which the facts are susceptible.   The synod may be invested with like authority over a private enterprise conducted for gain, on account of the benefit which would probably and naturally inure to such an insti-tution by reason of its association with a great religious organization.

A nonsuit may be granted when plaintiff's evidence estab-lishes a defense to the action; but, in that case the evidence in support of the defense must be open to no other reasonable inference than the truth of the essential elements of fact constituting the defense.

It cannot be said that the objection is purely technical, because, the plaintiff having made out a *prima facie* case, the defendant's immunity rests upon proof of facts suffi-cient to bring it within the exception to the rule.

For these reasons the nonsuit must be set aside, and the case remanded for a new trial, if plaintiff be advised that defendant is not, in fact, within the reason of the rule established in *Lindler* v. *Hospital,* 98 S. C. 25, 81 S. E. 512, upon the authority of which the nonsuit was granted.

Plaintiff seeks to distinguish this case from the Lindler case upon these grounds: (1) In that case, plaintiff was a beneficiary of the charity; in this, he was a stranger, sus-taining no relation to the charity, except that of an invited guest upon its premises, who had paid for his right to be there; (2) in that case, the negligence was that of a serv-ant of the hospital, who had been selected with due care; in this, the negligence was that of the corporation itself or its superior officers and agents, in failing to provide a safe place for an invited guest.

These differences in the facts of the two cases make no difference in the applicable law, because the exemption of public charities from liability in actions for damages for

tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbid the crippling or destruction of charities wnich are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the State in the promotion of many of the purposes for which the State itself exists. That being so, what difference can it make whether the tort is that of the corporation itself or its superior officers and agents, or that of its servants? Liability for the one would as effectually embarrass or sweep away the charity as the other. It would, therefore, be illogical to admit liability for the one and deny it for the other.

This rule does not put such charities above the law, for their conduct is subject to the supervision of the Court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of *respondeat superior,* which is itself based on reasons of public policy. The injured person has his remedy against the actual wrongdoer. It is said, however, that he may be and often is financially irresponsible. But the answer is that the law does not undertake to provide a solvent defendant for every wrong done. There are many cases of wrongful injury not compensated, because the wrongdoer is insolvent. The head of a family is liable for the torts of his servants; but you cannot take his homestead and break up

his family to satisfy a judgment against him, either for his own or for his servant's torts. Public policy says it is better for the individual to suffer the injury uncompensated than for the State to suffer the evil consequences of having the homes and families of its citizens destroyed. The State is likewise most deeply interested in the preservation of public charities. Questions of public policy must be determined upon consideration of what on the whole will best promote the general welfare.

It would serve no good purpose, except to show painstaking diligence in the consideration of the question at issue, to review the decisions of other Courts. This has been done in several cases cited in the arguments of counsel. The conclusions reached are variant and irreconcilable. Some Courts hold the rule of *respondeat superior* applicable to the fullest extent; others deny its applicability *in toto;* while others take intermediate ground for various reasons. The rule of total exemption is, perhaps, without exception, based upon grounds of public policy. That is the principle upon which liability was denied by the Court *en banc* in the Lindler case, and, as has been shown, its logical application requires exemption of public charities for the torts of their superior officers and agents as well as for those of their servants or employees, whether these be selected with or without due care.

Judgment reversed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur in the opinion of the Court.

MR. JUSTICE FRASER, *concurring.* I concur, under the authority of the Lindler case. By that case I am as much bound as if I had signed the majority opinion.

MR. JUSTICE GAGE, *dissenting in part.* I think the Circuit Court was right to grant the nonsuit, on the authority

of the Lindler case. I think the proof that the Associate Reformed Presbyterian Synod is a religious association engaged in the propagation of the gospel, and that the college is under the control of the synod, makes the college a charity.

If the synod controls the college, and if the synod is a religious association engaged in the propagation of the gospel, then the necessary inference is the synod is propagating the gospel by its operation of the college, for if it did other than that, it would be departing from its functions. No doubt the synod does make a profit in the operation of the college, but not for gain, and that fact cannot change the character of its college work. "The laborer is worthy of his hire." It is true if the synod does operate the college as a private enterprise for gain and such is its object, then that would be another question. But that inference is hostile to the charter of the synod as a religious association engaged in the propagation of the gospel. We take judicial notice of the fact that well-nigh all the religious denominations of the State control and operate colleges for women and men, too, as a part of the work of the church. Beyond cavil the plaintiff's right of action against the college is gone.

I concur with the leading opinion that this case is not differentiated from the Lindler case; that ends this case. But I think the defendant has proved its charitable character by so much evidence that a verdict to the contrary could not be reasonably sustained. I think it was not necessary for the defendant to prove its character beyond dispute.

I, therefore, think the order of nonsuit should not be reversed, but should be sustained.