The defendant appeals from two judgments, consolidated by stipulation for purposes of appeal, rendered against it for damages suffered by the plaintiffs, who are husband and wife, by reason of personal injuries received by Lola A. Stewart, the wife, hereafter referred to as the plaintiff, caused by the negligence of a nurse in the St. Helena Hospital, operated by the defendant, a nonprofit corporation. Trial was had before the court without a jury. On July 6, 1911, while still unconscious from the anesthetic administered during an operation, plaintiff was burned by a hot-water bag, placed in her bed for the purpose of warming it. The court found that the nurse was negligent in failing to remove the hot-water bag from the bed before placing the plaintiff therein, and also found that the defendant was negligent in not providing covers for the hot-water bags for use by the nurses. The court found that the nurse was competent. Defendant claims that under the circumstances found it is not liable for the injuries suffered by the plaintiff, for the reason that it is a charitable corporation.
The defendant corporation was organized June 10, 1898, and took over the St. Helena Sanitarium, which was founded in 1878. The court found that the defendant had never received any patients for prices less than those ordinarily charged by similar institutions conducted in this state for profit, and that no charity patients would be received or had been received or treated except by previous arrangement. It found that the defendant carried on the business in question under the name of the St. Helena Sanitarium, and that all business thereof was transacted in the name of said sanitarium; that there was nothing to indicate to a person applying *Page 420 
for treatment that the sanitarium was conducted by the defendant; it was not shown that any property was ever conveyed, transferred in trust, or donated to the defendant for charitable purposes; that plaintiff did not know or believe that the defendant owned the sanitarium in question, or that it was carried on or run as a charitable institution, but that plaintiff believed that she was dealing with the St. Helena Sanitarium, and in all her dealings she had no knowledge that it was or claimed to be a charitable institution, and that she paid the full price for the operation and all treatment and for the room furnished to her, and was not the recipient of any charity. The court also found with reference to the powers and purposes of the corporation and drew legal conclusions therefrom, but as the articles of incorporation and the by-laws are before this court, we will deal with them rather than with the specific findings of the trial court with reference thereto. The articles of incorporation authorize the defendant "to found hospitals or charitable asylums for the care and relief of indigent and other sick or infirm persons, at which institutions may be received also patients and patrons who are able to and do pay for the benefits there received, and which institutions shall devote the funds and property acquired and received by them from time to time from all sources, exclusively to maintaining themselves, improving theirconditions and facilities, extending their benefits and usefulness and facilities, and promoting their purpose by such sanitary, dietetic, hygienic, philanthropic, dress, and temperance reforms and efforts as are germane or auxiliary thereto, and to oppose the use of tobacco, tea, coffee, and other narcotics, as well as of alcoholic liquors, disseminate the principles of social purity, find homes for homeless children and outcast men and women, and care for the aged and infirm; train and send out missionary physicians and missionary nurses, to engage in the promulgation of the principles of hygiene, temperance reform, and Christian philanthropy, and enter upon various lines of work for the relief and betterment of the ignorant, unfortunate, degraded, and suffering, both rich and poor, without distinction to race or creed, and tomanufacture and sell hygienic goods and sanitary products, and to promote the objects of said institutions by means of classes, lectures, publications, and other appropriate methods, all of which work and acts shall be done without pecuniary *Page 421 
profit or dividend, direct or indirect, to any person or persons, and to acquire and hold by purchase, lease, gift, devise, and bequest, or any lawful means, such real estate, water rights, and other privileges, as may be necessary, useful or convenient in entering upon, promoting, or maintaining the objects of said incorporation, . . . become a member or stockholder in any other institution having for its object the treatment of invalids or sick people, and to sell, encumber, or otherwise dispose of the same."
The purposes outlined in the articles of incorporation are almost as broad as the field of Christian philanthropy, extending its limits throughout the whole world. It is obvious, however, that the intent of this corporation is to utilize the profits made by one institution in furthering the interests of that and of other institutions, or religious or hygienic propaganda, or for manufacture of hygienic goods, etc. The sanitarium in question had been operated at the time of the injury to the plaintiff for thirteen years (1898-1911), without having at any time received any charity patients. Whatever the intent of the organization generally, it was evident that the hospital itself was being used as a money-making institution, and should be treated as such, unless the fact that the corporation was a nonprofit-making corporation and that all money made in the hospital was ultimately devoted to some charitable purpose would prevent that. The character of the institution is to be determined not alone by the powers of the corporation as defined in its charter, but also by the manner of conducting the hospital. (See Del Mar Water etc. Co. v.Eshleman, 167 Cal. 666, 678, [140 P. 591, 948].) In the case of Vermillion v. Woman's College of Due West, 104 S.C. 197, [88 S.E. 649], the defendant claimed to be exempt from responsibility for a tort on the ground that it was a charitable corporation. The court, in disposing of the contention, said: "Defendant offered no evidence to prove its relation to the public, but relied on certain statutes to prove its incorporation and association with the Associate Reformed Presbyterian Synod to show that it is a public charity. Careful consideration shows that, while they warrant an inference that defendant is a public charity, they do not prove that fact beyond dispute, for they are not inconsistent with the view that defendant is a private corporation conducted for gain." And, in reply to the argument that the corporation *Page 422 
in question was by law under the control of the Presbyterian Synod, a "public charity corporation," and was, therefore, of the same character, the court said: "That may be so, but it is not the only inference of which the facts are susceptible. The synod may be invested with like authority over a private enterprise conducted for gain, on account of the benefit which would probably and naturally inure to such an institution by reason of its association with a great religious organization." And so we may say here, the declaration in the articles alone are insufficient to establish the character of the St. Helena Hospital as a public charity, and the evidence of the manner it was conducted shows that it was not. The courts of this country have almost unanimously arrived at the conclusion that hospitals organized for charitable purposes are not liable to their patients for injuries arising from the negligence of their employees, where reasonable care is used in the selection and retention of the employee, although the reasons given for this rule vary in the different states. Among the more recent authorities on that subject, in which the decisions from other states are collated, are Morrison v. Henke, 165 Wis. 166, [160 N.W. 173]; Magnuson v. Swedish Hospital, 99 Wn. 399, [169 P. 828]; Bishop Randall Hospital v. Hartley, 24 Wyo. 408, [160 P. 920]; Loeffler v. Trustees of Sheppard Enoch PrattHospital, 130 Md. 265, [L. R. A. 1917D, 967, 100 A. 301];Vermillion v. Woman's College of Due West, supra; Gamble v.Vanderbilt University, 138 Tenn. 616, [200 S.W. 510]. (See, also, 11 Corpus Juris, 374 et seq., secs. 106, 108; 5 R. C. L. 374 et seq., secs. 121, 124, and cases cited.) The question was also considered by this court in Department (July, 1914) inThomas v. German Gen. etc. Society, 168 Cal. 183, 188, [141 P. 1186]. It was there said, without discussing the doctrine, that "all the authorities pro and con have been industriously collated and learnedly reviewed in Basabo v.Salvation Army, 35 R.I. 22, [42 L. R. A. (N. S.) 1144,85 A. 120]. With the conclusion there reached we are in accord. That conclusion is that the true doctrine amounts to this: that where one accepts the benefit of a public or of a private charity, he exempts by implied contract the benefactor from liability for the negligence of the servants in administering the charity, if the benefactor has used due care in the selection of those servants." In view of the fact that the court *Page 423 
had arrived at the conclusion that under the ordinary rules pertaining to corporate liability the defendant in that case was not liable for the injury complained of because of the fact that the proximate cause of the injury was the negligence of a fellow-servant, for which the defendant was not in any event liable, and in view of the further fact that the court does not attempt to apply the rules enunciated in Basabo v. SalvationArmy, supra, to the facts of that case, the case cannot be considered as having committed this court to any one of the several theories on which the nonliability of charitable corporations is based, or to the doctrine of nonliability. It may be noted, however, that if this rule is followed, the defendant could hardly claim to be thereby relieved of responsibility, for the reason that the plaintiffs had no knowledge whatever of the charitable character of the organization.
The most liberal theory of exemption from liability for the negligence of the servant is that based upon what is known as the "trust fund theory." That is to say, that the exemption is based upon the proposition that the court will not allow funds held in trust for a charitable purpose to be diminished by the payment therefrom of damages due to the negligence of those employed by the trustees in charge of the trust property. This doctrine obtains in South Carolina, and the case ofVermillion v. Woman's College of due West, supra, was decided in view of that rule.
A more direct decision to the effect that a corporation organized to conduct a public charity may also conduct an enterprise for gain, and be liable for the negligence of its employees in such enterprise, although the profits derived therefrom are devoted to the general purposes of the charity, is found in Tennessee, one of the most recent states to adopt the trust fund theory of nonliability. That court was asked to apply the rule in the case of Gamble v. Vanderbilt University,supra, in a case where the injury arose by reason of the negligent operation of an elevator in the building held by the university as an endowment. The court, in holding the defendant responsible, admitted that a strict application of the trust fund theory to the facts of that case would exempt the defendant from liability, but there said: "Although this building was lawfully operated by the university as an investment for the purpose of making profits to be used in its educational work, as held in Vanderbilt University v. Cheney, *Page 424 116 Tenn. 259, [94 S.W. 90], yet it was in our judgment an enterprise sufficiently distinct and remote from the central activities of the charitable organization to make it inadvisable, from the viewpoint of public policy, to extend the exemption from liability thereto. . . . In our opinion as to such a remote enterprise the corporation should be held liable as any other corporation; but such damages as may be adjudged against it for breaches of duty in respect of such management should be charged as expenses of the operation of the particular property, and only the residue of the income should be available for the uses of the charity." (CitingWinnemore v. Philadelphia, 18 Pa. Sup. Ct. 625; Holder v.Massachusetts Horticultural Society, 211 Mass. 370, [97 N.E. 630].) In reference to the trust fund theory of nonliability in holding the defendant liable the court said: "How this shall be applied to particular cases or classes of cases is a matter in the wise discretion of the courts of each jurisdiction, according to their conception of sound policy. We can see no objection to the application of public policy as a ratiodecidendi. Every really new question that comes before the courts is, in the last analysis, determined on that theory, when not determined by differentiation of the principle of a prior case or line of cases, or by the aid of analogies furnished by such prior cases. In balancing conflicting solutions, that one is perceived to tip the scales which the court believes will best promote the public welfare, in its probable operation as a general rule or principle. But public policy is not a thing inflexible. No court is wise enough to forecast its influence in all possible contingencies. Distinctions must be made from time to time as sound reason and a true sense of justice may dictate."
In the instant case, we hold that the trial court was required to look not only to the defendant's articles of incorporation and by-laws to determine the character of the hospital conducted by it, but also to the method of transacting the business of the corporation. Its finding that the hospital was in fact operated for profit is supported by the evidence, and we see no good reason for exempting the defendant from the liability incurred by other hospitals conducted for profit. (See Williams v. Pomona Valley Hospital Assn., 21 Cal.App. 59, [131 P. 888].) It is, therefore, unnecessary to pass upon the nonliability of public charities for negligence or the reasons therefor. *Page 425 
With reference to other rulings claimed to be erroneous, it is sufficient to say that the demurrer to the complaint was properly overruled, the motion for nonsuit properly denied (Vermillion v. Woman's College of Due West, 104 S.C. 197
[88 S.E. 649]), and that the error, if any, in permitting the plaintiff to cross-examine witnesses concerning the method of conducting the hospital as a charity was not prejudicial.
Judgments affirmed.
Sloss, J., Richards, J., pro tem., Melvin, J., Shaw, J., Lorigan, J., and Angellotti, C. J., concurred.
Rehearing denied.