ARKANSAS VALLEY COOPERATIVE RURAL ELECTRIC COMPANY *v.* ELKINS.

4-5954                                                      141 S. W. 2d 538

Opinion delivered June 10, 1940.

*Greer Nichols* and *Hill, Fitzhugh & Brizzolara,* for appellants.

*Jonah E. Yates* and *Evans & Evans,* for appellee.

HOLT, J. George Elkins sued the Arkansas Valley Co-operative Rural Electric Company and Roy Wilson to recover damages for alleged personal injuries received by him when an automobile driven by Roy Wilson, and in which he (Elkins) was riding, struck a stump, on a private road, on the farm of appellee Elkins. A jury awarded him a judgment against both appellants and they have appealed.

The complaint alleges "that the defendant corporation is a co-operative corporation organized and doing business under the laws of the state of Arkansas under the Electric Co-operative Corporation Act, Act 342 of the Acts of 1937, with a place of business in Ozark, Arkansas, engaged in manufacture and acquisition of electric energy and in its sale, transmission and distribution and all incidental activities to that business."

It is further alleged that appellant, Roy Wilson, while acting as employee and agent of the appellant corporation, "came to the farm home of plaintiff and invited plaintiff to accompany him in an automobile which he was driving and operating, to a point on plaintiff's farm for the purpose of there examining and discussing the setting of electric light poles by defendant corporation upon, over and across the farm of plaintiff; that as the result of said invitation plaintiff entered the automobile being operated by said defendant and started across plaintiff's farm in said automobile, not on a public road or highway of this state, and that said defendant operated said automobile in a reckless, dangerous, negligent and careless manner and as the result of such operation drove said automobile into a stump," injuring appellee.

Appellants denied every material allegation in the complaint, denied any liability on the part of both appellants, and affirmatively pleaded the contributory negligence of appellee as a bar to recovery.

It will be observed, as alleged, in the complaint that appellant, Arkansas Valley Co-operative Rural Electric Company (hereinafter referred to as the corporation), is a domestic corporation and was created under act

342 of the acts of the legislature of 1937, §§ 2315-2351, inclusive, of Pope's Digest. It is non-profit sharing. It was not created for profit, but solely for the benefit of its members only.

Section 2317 of Pope's Digest provides "Co-operative, non-profit, membership corporations may be organized under this act for the purpose of engaging in rural electrification by any one or more of the following methods: (setting them out)."

Section 2318 enumerates corporate powers. "(1) To sue and be sued, complain and defend, in its corporate name." (4) To generate, manufacture, purchase, acquire and accumulate electric energy and to transmit, distribute, sell, furnish and dispose of such electric energy to its members only. . . ."

Section 2339 provides: "(a) Each corporation shall be operated without profit to its members by the rates, fees, rents or other charges for electric energy and any other facilities, supplies, equipment or services furnished by the corporation shall be sufficient at all times. . . . . (b) The revenues of the corporation shall be devoted first to the payment of operating and maintenance expenses and the principal and interest on outstanding obligations, and thereafter to such reserves for improvement, new construction, depreciation and contingencies as the board may from time to time prescribe. (c) Revenues not required for the purposes set forth in subsection (b) of this section shall be returned from time to time to the members on a pro rata basis according to the amount of business done with each during the period, either in cash, in abatement of current charges for electric energy, or otherwise as the board determines; but such return may be made by way of general rate reduction to members, if the board so elects."

Sections 2344 and 2345 exempt the corporation from all excise taxes and from the jurisdiction and control of the department of public utilities of this state.

It is first earnestly insisted that appellant corporation, being a non-profit sharing organization and

created solely for the benefit of its members, and not for profit, cannot be held liable in damages for injuries resulting from a tort of its employee, Roy Wilson. After a careful review of the record, we have reached the conclusion that this contention must be sustained.

We take judicial notice of the act of Congress of May 20, 1936, creating "an agency of the United States to be known as the 'Rural Electrification Administration.'" Title 7—United States Code Annotated, § 901, *et seq.*

Under this act, great sums of money were set aside with which to make loans to local co-operative agencies throughout the nation to enable rural residents to secure the conveniences afforded by electric service, a privilege that had theretofore been denied to them on account of the prohibitive cost.

This act also provided for the creation of local co-operative agencies to be organized under the laws of any state which could be non-profit sharing.

For the purpose of carrying out this worthy enterprise, and to enable rural residents to comply with and take advantage of the provisions of the federal act and to secure the loan of funds from the federal agency, the legislation, *supra,* was enacted in Arkansas in 1937.

Appellant corporation in the instant case was created, as indicated, under the special provisions applying to non-profit sharing corporations for the benefit of its members only. No provision is made for the creation of a fund out of which to respond for the tort of one of its members or employees, and unless there is statutory liability, in tort actions, appellant corporation cannot be held liable. True it may be sued to enforce contracts into which it might enter, but it cannot be made to respond in tort in the absence of statutory provision therefor.

The principal of law as applied to the liability of improvement districts is stated in *Board of Improvement Sewer Dist. No. 2* v. *Moreland,* 94 Ark. 380, 127 S. W. 469, 21 Ann. Cas. 957, where this court said:

"Public *quasi* corporations are created with limited statutory powers, and the general rule, as respects the question of liability to individuals for the negligence of their officers or agents, is that no such liability attaches unless expressly provided by statute. 1 Beach on Public Corporations, § 4, 262, 263; *Mahoney* v. *Boston,* 171 Mass. 427, 50 N. E. 939.

"In the case of *Elmore* v. *Drainage Commissioners,* 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363, the court said: 'A drainage district, however, is organized merely for a special and limited purpose. Its powers are restricted to such as the legislature has deemed essential for the accomplishment of such purpose, and it is only authorized to raise funds for the specific object for which it is formed, and can do that in no other mode than by special assessments upon the property benefited, which can in no case exceed the benefits to the lands assessed. No funds or means are furnished such district with which to pay damages, occasioned to individuals by the tortious or unauthorized acts of the drainage commissioners, and there is no express statutory requirement that it shall be liable for such torts.'' See, also, *Sewer Improvement Dist. No. 1 of Sheridan* v. *Jones,* 199 Ark. 534, 134 S. W. 2d 551.

We think the funds created by non-profit sharing corporations, such as in the instant case, are in the nature of trust funds. As was said by this court in *Chamber of Commerce of Hot Springs* v. *Barton,* 195 Ark. 274, 112 S. W. 619: "As was stated in the case of *Fordyce* v. *Library Ass'n,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A., N. S., 485, that the organization holds the property somewhat in the nature of the trust fund to be controlled, managed and used for the purposes of the corporation."

We have applied this same principle of law to charitable corporations which were non-profit sharing. The leading case in which this court denied liability of such corporations in tort actions is that of *Fordyce* v. *Woman's Christian Nat'l Lib. Ass'n,* 79 Ark. 550, 96 S. W. 155, 7 L. R. A., N. S., 485.

In the well-considered case of *Flueling* v. *Goeringer et al.*, 240 Mich. 372, 215 N. W. 294, we think the principles of law announced to be sound and apply here. It was there said:

"Upon this record we may not inquire whether the corporation was an improper employment of the statute. Plaintiff sued it as a duly organized corporation and seeks judgment against it as such, and we must accept it as a corporation not for pecuniary profit and determine whether it is liable, as such a corporation, to respond in damages for the tort of Goeringer. Plaintiff could not sue the corporation as a legal entity and then attack its organic existence and ask that it be held to a responsibility exacted of corporations having a different corporate existence.

"The law permitting corporations not for pecuniary profit admits of no business gains from which judgments in actions like this can be satisfied, and the company cannot turn the dues of the members to such a purpose, for the dues are devoted to a service from which the company derives no pecuniary gain. We must hold that the Checker Cab Company, existing as a non-profit corporation, is not liable to respond in damages for the tort of Goeringer."

Although we conclude there can be no liability as against appellant, Arkansas Valley Co-operative Rural Electric Company, it does not follow that a judgment against Roy Wilson should not be sustained.

The record reflects that Roy Wilson came to the farm home of appellee and invited appellee to accompany him in his (Wilson's) automobile, which Wilson was driving, to a point on appellee's farm for the purpose of locating certain electric light poles which appellant corporation was setting up on appellee's farm. Appellee gave the following testimony as to how he was injured as they started across appellee's farm:

"Q. Where were you going? A. Down in the field to look the situation over. Q. Where they made the survey in the field? A. Yes, sir, and as he was going along, he looked over to the left and said, 'That's

a fine covey of quails you have there,' and I was watching the road and I said to him about that time, 'Can you straddle that stump?', and about that time he hit it.''

The testimony further shows that Wilson had driven about 50 yards, at about 10 miles per hour, when he struck the stump. His car was in second gear at the time. When the car struck the stump appellee was thrown against the top of the windshield, received a rather severe cut on his forehead, and injured the back of his neck.

When we consider the testimony in its most favorable light to appellee, as we must do, we cannot say that the trial court erred in sending the case to the jury. Whether appellee was guilty of contributory negligence, we think, was submitted to the jury under proper instructions.

The duty resting upon appellee, under the facts in the instant case, is stated in 5 American Jurisprudence, 769, § 475, as follows: "A person riding in an automobile driven by another, even though generally not chargeable with the driver's negligence, is not absolved from all personal care for his own safety, but is under the duty of exercising reasonable care to avoid injury. The care exacted is that which an ordinarily prudent person would exercise under like circumstances. The law fixes no different standard of duty for a passenger in an automobile than for the driver. Each is bound to use reasonable care. What conduct on the passenger's part is necessary to comply with this duty must depend upon all the circumstances, one of which—and unquestionably an important one—is that he is merely a passenger having no control over the management of the vehicle in which he is riding.''

It is insisted, however, that appellee at the time of the alleged injuries was a guest in the automobile operated by appellant, Roy Wilson, within the meaning of the statute, § 1304 of Pope's Digest, and as such is precluded from recovery. The applicable portions of this section are:

"Section 1304. No person transported or proposed to be transported by the owner or operator of a motor

vehicle as a guest, without payment for such transportation, . . . shall have a cause of action for damages against such owner or operator, or other persons responsible for the operation of such car, for personal injury, including death resulting therefrom, by persons while in, entering, or leaving such motor vehicle, unless such injury shall have been caused by the wilful misconduct of such owner or operator. . . . Provided this act shall not apply to public carriers."

We cannot agree with this contention of appellants. We think it clear on the record here that the carriage of appellee in the car operated by appellant Wilson was for the mutual benefit of the parties and in ascertaining this fact we must take into account not only the act of transportation, but any contract or relationship of the parties to which it was an incident. Here appellee was giving appellant corporation a right-of-way across his farm and the parties were endeavoring to locate the poles in such a manner as to cause the least possible damage to appellee and it was for the purpose of agreeing upon the location of the right-of-way and the poles that appellee was riding with appellant Wilson and was, we think, for their mutual benefit.

On this question a case in point is the recent case of *Ward* v. *George*, 195 Ark. 216, 112 S. W. 2d 30, where this court said:

"In general terms these text-writers say that in determining who are 'guests' within the meaning of the automobile statutes the enactments should not be extended beyond the correction of the evil which induced their enactment, as they are in derogation of the common law. A general summary of the law appearing at § 2292 of Blashfield's Cyclopedia of Automobile Law and Practice reads as follows: 'One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, com-

panionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operator for their common benefit, or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments.''

Contention is also made that the judgment in the instant case is excessive, and to this contention we agree. All of the medical testimony tends to show that the injuries complained of are not permanent. In fact the trial court so instructed the jury at the request of appellants in instruction No. 5, in the following language: ''(5) You are instructed that the evidence fails to show that the plaintiff has received any permanent injury, and you cannot allow any damages for any alleged permanent injury to the plaintiff.'' Aside from the cut on appellee's forehead when his head struck the windshield, there is evidence that the back of his neck has given him pain since the injury and it is necessary for his wife to rub it with liniment to relieve the pain to enable him to sleep at night. He also at times takes ''painodine'' tablets to relieve the pain in the back of his neck.

Without setting out the testimony more in detail on this point, however, after a careful review of the record, we have reached the conclusion that the verdict of $6,000 returned by the jury in this case is excessive by $3,000 and that a judgment for an amount greater than $3,000 would not be warranted.

Complaint is also made that error was committed in the giving and refusing of certain instructions. Without setting them out here, which we think would serve no useful purpose, suffice it to say that upon examination, we think no error was committed in this regard.

On the whole case, therefore, we conclude that the judgment against appellant, Arkansas Valley Co-operative Rural Electric Company, must be, and is, reversed and dismissed. As to appellant Roy Wilson, if within fifteen judicial days from the date of this opinion ap-

pellee shall have entered a remittitur for $3,000, the judgment against him will be affirmed for $3,000, otherwise it will be reversed and the cause remanded for a new trial.