**868**

## BYRD

v.

## BLUE RIDGE RURAL ELECTRICAL COOPERATIVE, Inc.

### Civ. A. No. 1523.

United States District Court
W. D. South Carolina,
Anderson Division.

Feb. 18, 1954.

Chandler & Chandler, Greenville, S. C., Henry H. Edens & Henry Hammer, Columbia, S. C., for plaintiff.

Leatherwood, Walker, Todd & Mann, Williams & Henry, Greenville, S. C., for defendant.

WYCHE, Chief Judge.

In this case the complaint alleges that the plaintiff received severe injuries as a result of the negligence and willfulness of the defendant, its agents, servants and employees acting within the course and scope of their employment.

The case is before me upon defendant's motion to dismiss upon the following grounds: "the Complaint fails to state a claim against the defendant upon which relief can be granted in that defendant is a non-profit rural electrical cooperative and, as such, is not subject to suit for tort."

The Blue Ridge Rural Electrical Cooperative, Inc. was organized under the authority of the Rural Electric Cooperative Act of South Carolina, as set out in Chapter 15 of Volume 1 of the Code of Laws of South Carolina for 1952; it has been operated for the profit of no one and none of its members or patrons or anyone else receives any profit as a result of the operation thereof; it has only limited powers with regards to its funds and they are as set forth in Section 12–1037 of the Code of Laws of South Carolina for 1952, and are as follows: (1) To defray expenses of the cooperative and of the operation and maintenance of its facilities during such fiscal year; (2) To pay interest and principal obligations of the cooperative coming due in such fiscal year; (3) To finance or to provide a reserve for the financing of the construction or acquisition by the cooperative of additional facilities to the extent determined by the board of trustees; (4) To provide a reasonable reserve for working capital; (5) To provide a reserve for the payment of indebtedness of the cooperative maturing more than one year after the date of the incurrence of such indebtedness in an amount not less than the total of the interest and principal payments in respect thereof required to be made during the

next following fiscal year; and (6) To provide a fund for education in cooperation and for the dissemination of information concerning the effective use of electric energy and other services made available by the cooperative.

No provision has been made in the statute for any fund for the payment of tort claims and none has been set up by the defendant for that purpose; since its inception and up until the present time, the funds of the defendant have been used strictly in accordance with the statutory provisions heretofore set forth.

■ The question of the liability of a charitable institution to respond in damages for the negligence of its employees, agents and servants has been before the South Carolina Courts on several occasions. Regardless of what the rule in other jurisdictions may be the question has been settled in South Carolina by the adoption of the rule of full immunity of such institutions from the torts of their agents and servants. Lindler v. Columbia Hospital, 98 S.C. 25, 81 S.E. 512; Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649; Peden v. Furman University, 155 S.C. 1, 151 S.E. 907; Caughman v. Columbia Y.M.C.A., 212 S.C. 337, 47 S.E.2d 788.

The reason for the rule was clearly stated in Vermillion v. Women's College of Due West, 104 S.C. 197, 88 S.E. 649, and recently quoted with approval by Mr. Justice Oxner in Caughman v. Columbia Y.M.C.A., 212 S.C. 337, at page 344, 47 S.E.2d 788, 790, as follows: " ' * * * The exemption of public charities from liability in action for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbid the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists.' "

The defendant is a non-profit membership cooperative organized and operating under the provisions of the South Carolina Rural Electric Cooperative Act, Sections 12–1001 et seq. of the Code of Laws of South Carolina, 1952. This statute was passed as a result of and to take advantage of the Federal Rural Electrification Act, 7 U.S.C.A. §§ 901–914, which provided financial assistance in the form of long-term loans at favorable interest rates to local rural electric cooperatives.

The purpose of the South Carolina Act is stated in Section 12–1021, Code of Laws of South Carolina, 1952, as follows: "Cooperative non-profit membership corporations may be organized under this chapter for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas."

In Bookhart v. Central Electric Power Coop. Inc., 219 S.C. 414 at page 421, 65 S.E.2d 781, 783, the Supreme Court of South Carolina said: "As pointed out in the judgment under review, the need of available electric energy in rural, farm areas, of which this State is chiefly composed, was compelling and the great progress by which it has been met since the passage of the law is common knowledge."

■ Under the South Carolina statute, such cooperatives are exempt from regulation by the Public Service Commission. Section 12–1005, Code of Laws of South Carolina, 1952. Securities and evidences of indebtedness issued by these cooperatives are exempt from the provisions of the South Carolina Securities

**870**

Act. Section 12–1006, Code of Laws of South Carolina, 1952. Rural Electric Cooperatives in South Carolina pay $10 to the Secretary of State annually for each one hundred persons to whom electricity is furnished and in return are exempted from all other excise and income taxes imposed by the State of South Carolina. Section 12–1013, Code of Laws of South Carolina, 1952. It is obvious that such cooperatives have a special and favored position under the South Carolina statutes.

The defendant Blue Ridge Rural Electric Cooperative is a non-profit cooperative and no one derives any profit from its operation. Greene County Rural Electric Cooperative v. Nelson, 1944, 234 Iowa 362, 12 N.W.2d 886. As a nonprofit cooperative performing a laudable purpose in which the public and the State are interested, every reason given by the South Carolina Court in Vermillion v. Women's College of Due West, supra, for exemption from liability for tort applies. The same rule which applies to a hospital, a woman's college or a Y.M.C.A. should likewise apply to a Rural Electric Cooperative. The Arkansas Court applied the same rule in the case of Arkansas Valley Co-Op. Rural Electric Co. v. Elkins, 200 Ark. 883, 141 S.W. 2d 538, where it was specifically held that a nonprofit-sharing rural electric cooperative created under a statute similar to the South Carolina statute could not be held liable in damages for injuries resulting from a tort of one of its employees in the absence of a statute providing for such liability. There is no such statute in South Carolina.

▮ It is my opinion that the defendant, being a nonprofit-sharing membership cooperative created solely for the purpose of providing electric energy to rural areas which would not otherwise receive it, is not, under the South Carolina law, subject to suit in tort. The defendant's motion to dismiss should be granted, and

It is so ordered.