James Earl **BYRD**, Appellant,

v.

**BLUE RIDGE RURAL ELECTRICAL COOPERATIVE, Inc.**, Appellee.

No. 6789.

United States Court of Appeals Fourth Circuit.

Argued June 9, 1954.

Decided Sept. 2, 1954.

Henry Hammer, Columbia, S. C. (Chandler & Chandler, Greenville, S. C., and Henry H. Edens, Columbia, S. C., on brief), for appellant.

Wesley M. Walker and Ray R. Williams, Greenville, S. C. (J. D. Todd, Jr., Leatherwood, Walker, Todd & Mann and Williams & Henry, Greenville, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

James Earl Byrd sued Blue Ridge Rural Electrical Cooperative, Inc., to recover damages for the loss of both arms and other injuries which he alleged were caused by the negligence of the employees of the defendant in supplying and distributing electric power in certain counties in South Carolina. On motion of the defendant the suit was dismissed by the District Judge D.C., 118 F.Supp. 868 on the ground that the defendant is not subject to liability for tort under the laws of South Carolina. This appeal followed.

The Judge pointed out that the defendant is a non-profit cooperative organized under the Rural Electric Cooperative Act, set out in Chapter XV of the South Carolina Code of 1952, for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas. He said that a cooperative is in a special and favored position under the South Carolina statutes since it is exempt from control by the Public Service Commission, § 12–1005; and from the provisions of the South Carolina Securities Act, § 12–1006; and from the payment of excise and income taxes except the payment of $10 annually to the Secretary of State for each one hundred persons to whom it furnishes electricity, § 12–1013. He held that the defendant Cooperative serves a laudable public purpose and that it is therefore exempt from liability for tort for the reasons given by the Supreme Court of South Carolina for the exemption of public charities from such liability in Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649, as quoted with approval in Caughman v. Columbia Y. M. C. A., 212 S.C. 337, 344, 47 S.E.2d 788, 790, where the court said:

" 'The exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbid the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists."

The Judge abstained from the specific holding that a cooperative is a charitable organization but held that its nature is such that it must be given the exemption for the same reasons that it is accorded to charitable corporations. The defendant adheres to this position but at the same time it contends that a rural electric cooperative in South Carolina is eleemosynary in its nature and quasi-public by statute. We think that the judgment cannot be sustained unless the Cooperative is truly a charitable cor-

poration under the law of South Carolina, because these bodies are the only corporations, other than governmental or public bodies, that are exempt from liability for tort under the decisions of that state.[1]

■ In our judgment a cooperative formed under the laws of South Carolina, whether organized under Ch. 13 of the Code relating to cooperative associations generally, or under Ch. 15 of the Code, which embodies the rural electrical cooperative act, is not a charitable corporation in the sense in which this term is used in the laws of South Carolina. Our conclusion is not based upon the power conferred upon a South Carolina cooperative to sue and be sued, since charitable corporations have this power in South Carolina, see § 12–758 of the Code, but the nature and quality of the business of the cooperative is in our judgment the determining factor. The statute relating to cooperative associations generally, set out in Ch. 13 of the Code, empower an association created thereunder to conduct any agricultural, dairy, mercantile, manufacturing or mechanical business on the cooperative plan, and to buy, sell and deal in the products of any other cooperative company organized under the statute. Section 12–1022 of Rural Electric Cooperative Act, set out in Chapter 15 of the Code, authorizes the organization of a cooperative thereunder by five or more natural persons or two or more cooperatives, and confers upon such a cooperative, in addition to the powers conferred on all private corporations by § 12–101 of the Code, the power to generate, manufacture, purchase, distribute and sell electric energy to its members, to governmental agencies, and to other persons not in excess of ten per cent of its members in number; to construct, purchase and lease electrical transmission and distribution lines and generating plants, to borrow money and contract indebtedness, and to exercise the power of eminent domain for the construction and operation of electric distribution lines; and to do all acts and exercise all powers necessary, convenient or appropriate to accomplish the purpose for which the cooperative is organized; Section 12–1025.

Charitable organizations, on the other hand, are organized under Chapter 12 of the Code entitled Charitable, Social and Religious Corporations, which authorizes the Secretary of State to issue certificates of incorporation to any church, college, school, lodge, society, company or other association having no capital stock divided into shares, but holding or desiring to hold property in common for religious, educational, social, fraternal, charitable or eleemosynary purposes. It is to corporations formed for these purposes that the exemption from liability for tort has been extended by the Supreme Court of South Carolina. The philosophy underlying this doctrine is clearly considered and set out in the following passage from Vermillion v. Woman's College of Due West, 104 S.C. 197, 200, 201, 88 S.E. 649, where the ruling announced in Lindler v. Columbia Hospital, 98 S.C. 25, 81 S.E. 512, was reaffirmed. The court said:

"* * * the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employes. The principle is that, in organized society, the rights of the

1. Decisions as to the liability of electric cooperatives for tort under varying local conditions are conflicting. In Arkansas Valley Co-op Rural Electric Co. v. Elkins, 200 Ark. 883, 141 S.W.2d 538, the cooperative was held to be exempt; but in Consolidated Electric Coop. v. Panhandle E. Pipe Lines, 8 Cir., 189 F.2d 777, the opposite conclusion was reached.

individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charties in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists. * * *

"This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of *respondeat superior,* which is itself based on reasons of public policy. The injured person has his remedy against the actual wrongdoer."

In harmony with this doctrine is the decision in Johnson v. Spartanburg County Fair Ass'n, 210 S.C. 56, 41 S.E.2d 599, where it was held that a county fair association was not an eleemosynary corporation. Rejecting the contention that the fair association should be so regarded because it had been conducted from its inception as a charitable or eleemosynary corporation, the court said that the word "eleemosynary" in the statute was used in a broad sense to denote an unselfish purpose to advance the common good in any form or manner, and also pointed out that the fair association was not incorporated as a charitable corporation under the provisions of the South Carolina Code but was organized under the statute relating to the creation of business corporations.

The importance and extent of the business of a rural electric cooperative in South Carolina is shown in Bookhart v. Central Electric Power Coop., Inc., 219 S.C. 414, 65 S.E.2d 781, which related to the exercise by such a body of the right of eminent domain. The cooperative in that case comprised seventeen subsidiary cooperative member corporations which had distribution systems financed by the Rural Electrification Administration and were in competition with other power companies in other sections of the state. It was held that the cooperative itself was a public service corporation and as such obliged to make membership available without arbitrary or unreasonable limitations, and that the grant to it of the right of eminent domain was a constitutional exercise of legislative power. Public Service Corporations in South Carolina are of course liable for damages caused by their tort. Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E.2d 545.

Obviously a rural electric cooperative is not designed to accomplish the beneficial purposes in the public interest which a charitable association in the accustomed sense, such as a church, college or hospital, is organized to serve. It does not belong to the same category. It is essentially a business project designed to promote the convenience and material welfare of its members rather than the common good. Rural electrification has added much to the comfort of residents of rural areas and this worthy purpose has been advanced by the federal government through the loan of funds under the Federal Rural Electrification Act, 7 U.S.C.A. § 901 et seq., and by the State of South Carolina in relieving the organizations of certain governmental controls and of certain taxes. The statutes of the State, however, do not specifically grant exemption from liability for tort, and we do not think that we are justified in relieving them of a burden which inevitably attends the operation of a public utility and is regarded as an operating expense under modern conditions. The fact that the members of the association seek no profit as such, other than the enjoyment of electric service, does not transform the business venture into a charitable enterprise.

The Cooperative makes the further contention that it must be considered a charitable corporation because it is not only exempted by § 12–1013 from all income and excise taxes upon the payment

of an annual fee of $10 for each one hundred persons served, but is also exempted from all property taxes by § 65–1522(44) of the Code. Under these statutes a rural electric cooperative fares better than other rural electric lines which are exempted only from state, county, school and municipal property taxes under § 65–1522(45). The State Constitution in Art. 10 § 1 requires that the General Assembly provide by law for a uniform and equal rate of taxes; and in Art. 10 § 5 that taxes shall be uniform as respects person and property, and equal rate of taxes. It is argued in view of these provisions that the distinction between the taxes imposed upon rural electric cooperatives and the taxes imposed upon other rural electric lines can only be sustained constitutionally on the theory that the legislature was exercising the power conferred upon it by Article 10 § 1 of the Constitution to exempt property used for charitable purposes.

The Cooperative stresses the fact that the primary purpose of the privately owned electric utility is to make a profit whereas the object and purpose of the Cooperative is to furnish electric energy to residents of sparsely settled and remote areas so as to promote their welfare and raise their standard of living. These facts, it contends, justifies the conclusion of the legislature that the Co-operative is a charitable body.

In this connection attention is called to the case of Benjamin v. Housing Authority of Darlington County, 198 S.C. 79, 15 S.E.2d 737, in which the court held that a body set up by the legislature to construct low cost houses for the purpose of eliminating slums and providing homes for families of low income in rural areas was formed for a public purpose. Since the authority was an instrumentality of the county, operated exclusively for the benefit of the public and not for revenue, and the property owned by it was public property, it was held that the property was exempt from taxation under the provisions of Art. 10 § 4 of the Constitution, which provides for the exemption from taxation of all county, township and municipal property used exclusively for public purposes and not for revenue. The court also held that the provision of the Housing Authority Act exempting the property of the authority was within the power conferred upon the legislature by Art. 10 § 1 to exempt all property used for municipal, educational, literary, scientific, religious or charitable purposes. In like manner it is now contended, the statutes exempting the property of the Cooperative from taxation must be taken as an exercise of the power of the legislature to exempt property used for charitable purposes.

We are also asked to consider the decision of the Supreme Court of South Carolina in Rice Hope Plantation v. South Carolina Public Service Authority, 216 S.C. 500, 59 S.E.2d 132, which held that the Authority was not subject to suit in an action *ex delicto* against it for the reason that it was an agency of the State and as such entitled to the immunity attaching to the sovereignty. There was no provision in the statute which expressly gave it this immunity and yet it was held to be exempt; and in like manner it is urged that the electric cooperative should be held to be immune.

There is no merit in these contentions. It is not necessary to invoke the constitutional power to exempt from taxation property used for charitable purposes in order to sustain the statutes which exempt the property of rural electric cooperatives. It is well settled in South Carolina that the power to prescribe what property shall be taxed implies the power to prescribe what property shall be exempt from taxation, and that in the absence of a constitutional provision to the contrary, the legislature may exempt such classes of property as in its opinion the public policy of the state requires. It is likewise settled that every presumption must be adjudged in favor of such legislative action and it must not be declared invalid unless the conflict with the constitution is irreconcilable. Duke Power Co. v. Bell, County Treasurer, 156 S.C. 299, 310, 311, 152 S.E. 865. In the exercise of

this power the legislature has listed the exemptions from taxation set out in § 65–1522(1) to (45) and this section has been held constitutional in Epworth Orphanage v. Wilson, 185 S.C. 243, 193 S.E. 644; Strong v. Sumter, 185 S.C. 203, 193 S.E. 649.

In Duke Power Co. v. Bell, supra, the power of the legislature to exempt from taxation manufacturers in certain counties of the state was upheld as within the power of the legislature to exempt property for municipal purposes under Art. 10 § 1 of the Constitution; and in these and subsequent cases the words "municipal purposes" have been given a broad meaning, signifying a public or governmental purpose as distinguished from a private purpose. See Ellerbe v. David, County Treas., 193 S.C. 332, 8 S.E.2d 518; Byrd v. Lawrimore, County Treas., 212 S.C. 281, 47 S.E.2d 728. That the rural electric cooperatives serve a beneficial public purpose in South Carolina is a concession in this case and their exemption from taxation is accordingly justified on this ground.

It cannot be said that the exemption violates the provisions as to uniformity of taxation contained in Art. 10 §§ 1 and 5 of the State Constitution or the due process or the equal protection clauses of the 14th Amendment to the Federal Constitution. The fundamental rule is that the State legislature has the right to make reasonable classifications of persons and property for taxation purposes. It is elementary that if the classification bears a reasonable relation to the legislative purpose sought to be effected, and if all the members of each class are treated alike under similar circumstances, the equal protection clauses of the Constitutions are fully complied with. Duke Power Co. v. Bell, supra, 156 S.C. at page 318, 152 S.E. 865.

The distinction between the rights and liabilities of the public bodies considered in Benjamin v. Housing Authority of Darlington County, 198 S.C. 79, 15 S.E. 2d 737, and Rice Hope Plantation v. South Carolina Public Service Authority, 216 S.C. 500, 59 S.E.2d 132, hereinbefore referred to, on the one hand, and the rights and liabilities of rural electric cooperatives in South Carolina on the other, is clear. Both of the former bodies were agencies of the government and it was in accord with the law of the state to hold the one free from liability for tort and to hold that the other served a charitable purpose in providing cheap housing for the indigent. On the other hand, the defendant cooperative in this case, although serving a public purpose of the State, was an association to provide citizens organized to secure for themselves the benefits of electric service at the lowest possible cost. It is clear that the cooperative was not free from liability for tort either as a public body or a charitable organization.

The judgment of the District Court will be reversed and the case remanded for further proceedings.

Reversed and remanded.