16079

CAUGHMAN v. COLUMBIA Y. M. C. A.

(47 S. E. (2d) 788)

338

*Mr. Heyward Brockinton,* of Columbia, for Appellant,

*Messrs. Robinson & Robinson,* of Columbia, for Respondent,

May 13, 1948.

OXNER, Justice.

The only question which we find it necessary to determine on this appeal is whether a charitable organization or institution is liable for compensation as an employer under the provisions of the Workmen's Compensation Act of South Carolina. This question was answered in the affirmative by the Industrial Commission and in the negative by the Circuit Court. This appeal by the employee followed.

Appellant, Curtis Caughman, was employed by respondent, the Columbia Y. M. C. A., on October 1, 1946, and on the following day, while washing the walls of the Y. M. C. A. building, a scaffold upon which he and some other Negro employees were standing fell, resulting in an injury to appellant's left heel.

Respondent's status as a charitable institution is not questioned. It is a non-profit, character building institution, having for its aim the mental, physical and religious development of boys and young men. Our Workmen's Compensation Act does not specifically include charitable institutions, nor does

it expressly exempt them. The definitions of employers and employees who are subject to the provisions of the Act (Section 7035-2 of the 1942 Code) are very broad and comprehensive and are entirely sufficient to include charitable institutions. Under the terms of this section and Section 7035-16, certain employers and employees are specifically exempted unless they voluntarily elect to be bound, but charitable institutions are not among those enumerated in the exceptions. If they do not come within the provisions of the Act, their exclusion must be by implication. In determining whether they are excepted in this manner, we must consider the intention of the Legislature as manifested by other parts of the Act and also the general purpose and design of this legislation.

"In determining what classes of employers come under a compensation act, recourse must be had to the whole scope and scheme of the act, or to its whole scope and purpose, rather than to technical definitions of particular words or to a literal construction of particular phrases therein." 71 C. J., page 394. "Courts are not always confined to the literal meaning of a statute; the real purpose and intent of the lawmakers will prevail over the literal import of the words. * * * A statute as a whole must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policy of the lawmakers." *Greenville Baseball, Inc. v. Bearden, Sheriff, et al.,* 200 S. C. 363, 20 S. E. (2d) 813, 815; *Ashley v. Ware Shoals Mfg. Co. et al.,* 210 S. C. 273, 42 S. E. (2d) 390. Equally well settled is the rule that "the definitions of 'employer' contained in the compensation acts, or statements as to who shall be deemed employers, should be broadly or liberally construed, in order to effectuate the purpose of the legislation." 71 C. J., page 395. We have held that the basic purpose of the Act "is the inclusion of employers and employees, and not their exclusion; and * * * that doubts of jurisdiction must be resolved in favor of inclusion rather

than exclusion." *Yeomans v. Anheuser-Busch, Inc.,* 198 S. C. 65, 15 S. E. (2d) 833, 835, 136 A. L. R. 894; *Alewine et al. v. Tobin Quarries, Inc., et al.,* 206 S. C. 103, 33 S. E. (2d) 81.

Having stated the foregoing general rules of construction, we now turn to the purpose sought to be accomplished by this legislation. It was stated in *Marchbanks v. Duke Power Co. et al.,* 190 S. C. 336, 2 S. E. (2d) 825, 836, that workmen's compensation acts "are in derogation of, or departures from, the common law, and are not amendatory, cumulative or supplemental thereto, nor declaratory thereof, but wholly substitutional in character." In *Tedars et al. v. Savannah River Veneer Co. et al.,* 202 S. C. 363, 25 S. E. (2d) 235, 243, 147 A. L. R. 914, the Court said: "To great extent the whole scheme of workmen's compensation is to place the economic burden of industrial accidents upon industry rather than upon the workers and their dependents, and as to the latter thereby rendered indigent, upon the State." It was said in *Cokeley et al. v. Robert Lee, Inc.,* 197 S. C. 157, 14 S. E. (2d) 889, 893, that compensation laws "were enacted primarily for the benefit, protection and welfare of working men and their dependents, to relieve them of the uncertainties of a trial in a suit for damages, to cast upon the industry in which they are employed a share of the burden resulting from industrial accidents, and to prevent the burden of injured employees and their dependents becoming charges on society." These statements of the purposes of compensation acts are largely in accord with those given in other jurisdictions. See 71 C. J., Workmen's Compensation Acts, Section 15.

In determining whether the Legislature intended that the act should apply to charitable institutions, it is also necessary to consider the status of such institutions with reference to tort liability prior to the enactment of this legislation. The question of the liability of a charitable institution to respond in damages for the negligence of its

managers, agents and servants has been before the courts on numerous occasions. It is one upon which there has been, and is, a conflict of decisions not only upon the question of liability but under what circumstances it exists; and among those courts adhering to the rule of non-liability, there has also been a remarkable diversity of opinion as to the correct reason or ground for so deciding. Some courts hold that there is no liability to those who avail themselves of the benefits of the charity, but impose liability where the injured person is a stranger to the institution or to its charity, or is an employee or servant, or is on the premises by express or implied invitation. An exhaustive review of the decisions of all the states and a learned discussion of the subject will be found in *Andrews v. Young Men's Christian Association,* 226 Iowa 374, 284 N. W. 186, and *President and Directors of Georgetown College v. Hughes,* 76 U. S. App. D. C. 123, 130 F. (2d) 810. The writer is strongly impressed with the view adopted in a number of jurisdictions that such institutions should unqualifiedly be held responsible for their negligence. However, the question has been settled in this jurisdiction by adoption of the rule of full immunity of such institutions from the torts of their agents and servants. It first came before this Court in *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512, which was an action by a patient of the hospital to recover for personal injuries alleged to have been sustained as a result of the negligence of a nurse employed therein. A majority of the Court, sitting *en banc,* held that it is against public policy to hold a charitable institution responsible for the negligence of its servants. In *Vermillion v. Woman's College of Due West,* 104 S. C. 197, 88 S. E. 649, 650, one who attended a musical entertainment given in the college auditorium, for which an admission fee was charged, died as a result of injuries sustained by the falling of a balcony caused by negligence in its construction. An action was brought for alleged wrongful death. It was held that if the college was operated as a charitable institu-

tion, there could be no recovery. The Court said: "* * * The exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbid the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employees. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists."

It must be assumed that the Legislature was aware of the policy established by these decisions when the legislation under consideration was enacted, and it is reasonable to suppose that if it was intended to change such policy, the Legislature would have expressly so declared, as was done in the case of the State and municipal corporations which are likewise immune from suit in the absence of an enabling act but were expressly included in the act under consideration. While some of the reasons heretofore stated for the enactment of workmen's compensation would apply to employees of charitable institutions just as much as to those in industry, there are others that do not. It could not be said that this act was intended to relieve employees of such institutions of "the uncertainties of a trial in a suit for damages" because they were not subject to suit. Nor as to such employees could our act be regarded as "substitutional in character" since there was no pre-existing liability to be substituted.

Our Act is not compulsory. Either the employer or the employee may elect not to be bound by its provisions. If the employer does so, he is only deprived of the common law defenses of assumption of risk, fellow servant rule and contributory negligence if sued by an employee for damages at common law, Section 7035-17 of the 1942 Code; *Nuckolls v. Great Atlantic & Pacific Tea Co.*, 192 S. C. 156, 5 S. E. (2d) 862. The fact that the non-assenting employer is deprived of these defenses is no doubt a great inducement for an employer to operate under the provisions of the act. But it would constitute no inducement to a charitable institution. If, as appellant contends, the act covers charitable institutions, they could preserve their immunity from any liability by merely electing to remain outside the act.

We are not undertaking to say that the act was intended to impose liability for compensation only upon such employers as were subject to suit at common law for damages. The question might arise under circumstances different from those now before us. But we are of opinion that considering the act as a whole in the light of the well settled law of this state as to the non-liability of charitable institutions in tort actions, it was not intended that the act should apply to such institutions. There may be good reasons why it should be made applicable to them, but that is a matter for the General Assembly.

The question involved has been passed upon in comparatively few other jurisdictions. The dearth of authority may be largely due to the fact that in perhaps most of the states, the courts impose liability at common law upon charitable institutions for injuries to their employees caused by the negligence of their agents or servants. In these jurisdictions the reasons here given for excluding such corporations from the provisions of the workmen's compensation act would not apply. To illustrate: It was held in the recent case of *Schneider v. Salvation Army*, 217 Minn. 448, 14 N. W.

·(2d) 467, that charitable institutions are not exempt from the provisions of the Minnesota Workmen's Compensation Act, M. S. A. § 176.01 *et seq.,* but·under the decisions of the Supreme Court of that State, such institutions were subject to suit at common law for injuries to an employee. *McInerny v. St. Luke's Hospital Association,* 122 Minn. 10, 141 N. W. 837, 46 L. R. A., N. S., 548. Appellant calls our attention to *Hall v. Salvation Army et al.,* 261 N. Y. 110, 184 N. E. 691, where the Court of Appeals of New York held that workmen employed in the Salvation Army come within the New York Workmen's Compensation Act. The provisions of the New York Act are not set forth in the opinion but do appear in the opinion of the Appellate Division of the Supreme Court from which the appeal was taken. See 236 App. Div. 199, 258 N. Y. S. 269. It there appears that charitable institutions are specifically mentioned in the New York Act. The other case relied on by appellant, *Hope v. Barnes Hospital,* 227 Mo. App. 1055, 55 S. W. (2d) 319, appears to sustain his contention but we have been unable to find any other decision that does. On the other hand, our conclusion is clearly sustained by the following cases : *Zoulalian v. New England Sanatorium & Benevolent Association,* 230 Mass. 102, 119 N. E. 686, L. R. A. 1918F, 185; *Hartford Accident & Indemnity Co. v. Department of Industrial Relations et al.,* 139 Cal. App. 632, 34 P. (2d) 826, 830.

In the *Zoulalian case,* the Court said : "It is the contention of the plaintiff that the defendant is within the provisions of the Workmen's Compensation Act (Stat. 1911, chap. 751, and acts in amendment thereof) ; but we are unable to agree with this contention. While it is provided by section 2 of part 1, that 'the provisions of section 1 shall not apply to actions to recover damages for personal injuries sustained by domestic servants and farm laborers,' it does not follow that all other employees who may be injured in the course of their employment are within the terms of the act. Undoubt-

edly the rules of law declared by this court relating to persons injured while in the employ of charitable institutions may be changed by the Legislature, still that such change was made by the Workmen's Compensation Act is not to be inferred in the absence of a plain intention on the part of the Legislature to that effect."

After a careful review of the authorities in the *Hartford case,* the Court reached the following conclusion: "From a consideration of the American authorities on the subject * * *, it becomes clear that the trend of the decisions, notwithstanding the broad general terms expressed in the various statutes by which compensation is provided, as applied to 'all' corporations and 'public agencies' for injuries sustained by workmen in their employ arising out of and in the course of their employment, is toward a construction that, in the exercise of their charitable functions, in effect exempts charitable corporations from the operation of the law as applied to individuals, or to the ordinary business corporations. The reasons usually assigned for such conclusion are that by common law no liability existed; that the Legislature presumably was aware of such state of the law; and that in the absence of special language by virtue of which such liability was created, the presumption must be that the legislature intended that the exemption that existed at common law should not be disturbed."

It is unnecessary to determine the other questions raised on this appeal.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.