16953

NATHANIEL BUSH, by G. A. L., Jackson Bush, Respondent, v.
AIKEN ELECTRIC COOPERATIVE, INC., Appellant

(85 S. E. (2d) 716)

*Messrs. Whaley & McCutchen* and *Hoover C. Blanton,* of Columbia, and *Joe F. Anderson,* of Edgefield, *for Appellant,*

*Messrs. B. E. Nicholson* and *J. R. Folk,* of Edgefield, *for Respondent,*

January 24, 1955.

OXNER, Justice.

This action, which is based on the "attractive nuisance" doctrine, was brought for the recovery of damages sustained by plaintiff when he climbed one of defendant's poles and came in contact with a high voltage electric wire. The case is here on appeal from an order (1) overruling a demurrer interposed by the defendant upon the ground that as a non-profit rural electric cooperative, it is not subject to liability for tort, and (2) refusing a motion by defendant to make the complaint more definite and certain by alleging therein the date of the birth of the plaintiff, a minor. These two questions are unrelated and will be separately discussed.

Appellant, defendant below, was organized under Chapter 15, Title 12, Volume 1, of the 1952 Code, known as the "Rural Electric Cooperative Act". This legislation authorizes the organization of a cooperative non-profit membership corporation "for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas", Section 12-1021, by five or more natural persons or two or more cooperatives, Section 12-1022, and confers upon such a cooperative, in addition to the powers conferred on all private corporations by Section 12-101, the power to generate, manufacture, purchase, distribute and sell electric energy to its members, to governmental agencies, and to other persons not in excess of 10% of its members in number; to make loans to persons to whom it supplies electricity for the purpose of wiring their homes and installing therein electrical fixtures and appliances, and in connection therewith to purchase and sell or lease such fixtures and appliances; to construct, purchase and sell electrical transmission and distribution lines and generating plants; to borrow money and contract indebtedness, to exercise the power of eminent domain; and to do all acts and exercise all

powers necessary, convenient or appropriate to accomplish the purpose for which the cooperative is organized. Section 12-1025.

Such cooperative is exempt from the jurisdiction and control of the Public Service. Commission, Section 12-1005, from all income and excise taxes upon the payment of an annual fee of $10.00 for each hundred persons served, Section 12-1013, and from all property taxes, Section 65-1522 (44) of the 1952 Code.

It is further provided that the revenues of a cooperative, after paying the expenses of operation and maintenance, meeting the principal and interest requirements on its obligations, setting aside certain reserves, and providing a fund for the dissemination of information concerning the effective use of electric energy and other services rendered by such cooperative, shall, unless otherwise determined by a vote of the members, "be distributed by the cooperative to its members as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year." Section 12-1037. A cooperative may be dissolved by its members and upon dissolution, the assets, after the payment of all debts, obligations and liabilities, are distributed "among its members in proportion to the aggregate patronage of each such member during the seven years next preceding the date of such filing of the certificate" of dissolution. Section 12-1062.

We had occasion in *Bookhart v. Central Electric Power Cooperative, Inc.*, 219 S. C. 414, 65 S. E. (2d) 781, 784, to discuss the history and purpose of the "Rural Electric Cooperative Act". As there pointed out, this legislation was designed to make electric energy available in rural areas as cheaply as possible and to advance this purpose, the Federal Government, under the Rural Electrification Act, 7 U. S. C. A. § 901 *et seq.*, authorized long term loans to these cooperatives on favorable terms and the State has relieved them of certain governmental controls and taxes. We held in the *Bookhart case* that they were public service corpora-

tions and, as such, obliged to make membership available without arbitrary or unreasonable limitations. It was further stated that the members of these cooperatives "take the place of the stockholders and customers of privately owned utilities; they are both owners and customers."

The question of whether a cooperative formed under the Rural Electric Cooperative Act enjoys immunity under the laws of South Carolina from tort liability was squarely presented in *Byrd v. Blue Ridge Rural Electrical Cooperative, Inc.,* 4 Cir., 215 F. (2d) 542. In a well reasoned opinion, the Court held that these cooperatives are not exempt from liability for torts. We are in full accord with this decision.

We do not understand appellant to claim immunity on the ground that it is a governmental agency. Indeed, there could be no basis for freedom of liability on this ground. Appellant came into existence at the volition of the incorporators. The State has not undertaken to name its governing board or to control its affairs. It may be dissolved at the will of its members and upon such dissolution the State receives none of its property. Although serving a public purpose, it is a voluntary association to provide its members the benefits of electrical service at the lowest possible cost. Accordingly, the cases of *Rice Hope Plantation v. South Carolina Public Service Authority,* 216 S. C. 500, 59 S. E. (2d) 132, and *Benjamin v. Housing Authority of Darlington County,* 198 S. C. 79, 15 S. E. (2d) 737, have no application. In the former it was held that the defendant was not subject to liability for tort because it was an agency of the State and as such entitled to immunity attaching to the sovereignty. In *Benjamin v. Housing Authority of Darlington County, supra,* it was held that the defendant, a body set up to construct low cost houses for the purpose of eliminating slums and providing homes for families of low incomes in rural areas, was exempt from taxation. There the defendant was an instrumentality of the county, operated exclusively for the benefit

of the public and the property owned by it was public property. None of these considerations exist here.

Appellant claims that the act clearly discloses a legislative intent to exempt electric cooperatives from tort liability. It is said that they are special statutory corporations serving a public purpose, free from control of the Public Service Commission, and that to subject them to liability for damages would necessitate writing into the act a provision for tort liability which the legislature saw fit to omit, contrary to the provision that the act "shall be construed liberally." Attention is called to the fact that these are non-profit organizations, which have been exempted from taxation, and that in directing how their revenues shall be disbursed, no provision is made for payment of tort liability.

The statute contains no express grant of immunity from tort liability. In the absence of such, it may not be fairly assumed that the legislature intended that these corporations, which are extensively engaged in selling and distributing a highly dangerous commodity and which benefit primarily only their members, should be immune from liability for their negligence or recklessness. The fact that they have been exempted from certain taxes is no proof of an intent to exempt them from tort liability. Tax exemptions are governed by wholly distinct considerations. We have various tax exemption statutes relating to private corporations, but no one would contend that this indicates an intent to relieve them from liability in actions *ex delicto*. Nor does immunity from tort liability follow from the fact that these electric cooperatives are characterized as non-profit organizations. It is true that no dividends are paid on invested capital and it may be proper, as held in *Greene County Rural Electric Cooperative v. Nelson,* 234 Iowa 362, 12 N. W. (2d) 886, 888, to treat the patronage refunds in the nature of a return of an overcharge. It was there stated: "Any net earnings are returned on the basis, not of membership or investment, but of business done. It is literally no more than a return of

an over-charge originally assessed to provide a margin of safety in the operation of the business." But regardless of the nature of the surplus revenue, there is no surplus to refund until all liabilities, including those for tort, have been discharged. To require a corporation to pay its just debts and liabilities does not have the effect of destroying its general character as a non-profit corporation. Liability for tort is a hazard that may be considered as part of the expenses of operation and maintenance of the facilities of electric cooperatives provided for in Section 12-1037(1).

■ There remains for consideration the question of whether these cooperatives may be properly classified as charitable corporations. Under our decisions institutions of this kind, on grounds of public policy, enjoy full immunity from tort liability. *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512; *Vermillion v. Woman's College of Due West,* 104 S. C. 197, 88 S. E. 649; *Caughman v. Columbia Y. M. C. A.,* 212 S. C. 337, 47 S. E. (2d) 788. The basis for this immunity was stated in *Vermillion v. Woman's College of Due West, supra* [104 S. C. 197, 88 S. E. 650], as follows:

"* * * the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employes. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable ad-

juncts of the state in the promotion of many of the purposes for which the state itself exists."

We do not think these reasons apply to rural electric cooperatives. Their funds are not derived from charitable donations, nor can it be said that their members are recipients of charity. As heretofore pointed out, they are organized primarily for the benefit of the members. Of course, there is a collateral benefit to the community as a whole which inevitably attends the betterment of the condition of any substantial part of the population. In *Michael v. St. Paul Mercury Indemnity Co.*, D. C., 92 F. Supp. 140, 144, the Court said: "A cooperative corporation is created by a banding together of persons for their common advantage or advancement, financial or otherwise, and is organized for the mutual benefit of its members, whereas a charitable organization is organized for some benevolent purpose for the benefit of the public or an indefinite class thereof."

The fact that a corporation is not operated for profit is not controlling on the question of whether it is a charitable corporation. *Tri-State Fair v. Rowton,* 140 Tenn. 304, 204 S. W. 761, L. R. A. 1918F, 657. In this case and in *Lichty v. Carbon County Agricultural Association,* D. C., 31 F. Supp. 809, it was held that a fair association, although not organized for profit and serving an educational purpose, was not entitled to immunity from tort liability on the ground that it is a charitable institution. In *Textile Hall Corporation v. Hill,* 215 S. C. 262, 54 S. E. (2d) 809, we held that a corporation organized primarily for the purpose of holding biennial expositions dealing with the textile industry, although non-profit in nature, was not for a charitable, scientific or educational purpose within the contemplation of the Constitution permitting institutions organized for these purposes to be exempt from taxation.

Chapter 12, Title 12, Volume 1 of the 1952 Code, authorizes the incorporation of charitable, social and religious corporations. It provides that no charter for such corporation shall be issued unless recommended by the South Caro-

lina Board of Public Welfare after investigating the merits of the proposed corporation. Appellant was not organized under this chapter.

We are in full accord with the following conclusion of the Circuit Court of Appeals in *Byrd v. Blue Ridge Rural Electrical Cooperative, Inc., supra,* 215 F. (2d) 542, 545: "Obviously a rural electric cooperative is not designed to accomplish the beneficial purposes in the public interest which a charitable association in the accustomed sense, such as a church, college or hospital, is organized to serve. It does not belong to the same category. It is essentially a business project designed to promote the convenience and material welfare of its members rather than the common good."

Further support for the foregoing views will be found in *Consolidated Electric Cooperative v. Panhandle Eastern Pipe Lines,* 8 Cir., 189 F. (2d) 777. A contrary conclusion was reached in *Arkansas Valley Co-op. Rural Electric Co. v. Elkins,* 200 Ark. 883, 141 S. W. (2d) 538, but we are not in accord with the view there taken. We may add that apparently now by statute cooperatives in Arkansas are subject to tort liability. Ark. Stats. 1947, § 64-1525, Acts of 1947, No. 362.

Finally, it is contended that these cooperatives must have been deemed by the legislature as charitable institutions within the contemplation of Article 10, Section 1 of the Constitution, for otherwise they could not have been lawfully exempted from taxation. We may say first that the validity of the exemption is not before us and, secondly, that it does not follow from the fact that a corporation has been given tax exemptions that it is a charitable institution. In *Duke Power Company v. Bell, County Treasurer,* 156 S. C. 299, 152 S. E. 865, and in *Byrd v. Lawrimore, County Treasurer,* 212 S. C. 281, 47 S. E. (2d) 728, the exemption of private corporations from certain taxes was sustained under a broad definition of the words "municipal purposes" in Article 10, Section 1 of the

Constitution. Yet no one would suggest that these corporations were immune from tort liability.

Before concluding this phase of the case, the writer desires to repeat the observation made in *Caughman v. Columbia Y. M. C. A., supra,* 212 S. C. 337, 47 S. E. (2d) 788, to the effect that he seriously doubts the soundness of the rule giving charitable institutions immunity from tort liability. Be that as it may, there is certainly no good reason for the extension of this doctrine to a degree never contemplated when the rule was adopted.

The remaining question is whether the Court below erred in refusing the motion by appellant to make the complaint more definite and certain by alleging the date of birth of respondent. The complaint only contains a general allegation that respondent is a minor. In the Court below appellant admitted possession of the information sought by this motion. It appears that the birth certificate of respondent is on record in the office of the Clerk of Court for Edgefield County. Assuming that the refusal of appellant's motion is appealable before final judgment under the principles state in *Rice Hope Plantation v. South Carolina Public Service Authority, supra,* 216 S. C. 500, 59 S. E. (2d) 132, we think the ruling of the Court was correct.

The order appealed from is affirmed.

BAKER, C. J., and STUKES, TAYLOR and LEGGE, JJ., concur.