17592

Mrs. Bernice P. EISERHARDT, Respondent, v. STATE AGRICULTURAL AND MECHANICAL SOCIETY OF SOUTH CAROLINA, Appellant

(111 S. E. (2d) 568)

*Messrs. Cooper & Gary, Frank B. Gary* and *Frank K. Sloan,* of Columbia, *for Appellant,*

*Messrs. Golden & Lourie* and *Harvey L. Golden,* of Columbia, *for Respondent,*

*Cooper & Gary, Frank B. Gary* and *Frank K. Sloan,* of Columbia, *for Appellant,* in Reply.

December 11, 1959.

OXNER, Justice.

Plaintiff brought this action to recover damages for personal injuries sustained on the evening of September 21, 1957, as a result of stepping into a hole in a parking lot controlled and operated by defendant. Plaintiff and others in her family were planning to attend a Duke-Carolina football game. They drove into this lot, paid a parking fee of fifty cents and the injury occurred when plaintiff stepped out of the automobile. She alleged negligence and recklessness on the part of the defendant in the maintenance of said parking area. Defendant denied all allegations of negligence and recklessness, interposed a plea of contributory negligence and willfullness, and as a further defense alleged that it was an eleemosynary corporation, immune from liability for tort under the laws of this State. It also moved for judgment on the pleadings upon the ground that its charter and the pleadings clearly established that it was immune from tort liability. This motion was refused by the County Judge. He held that the fact alone that defendant was chartered as an eleemosynary corporation "does not itself *ipso facto* grant to it im-

.munity from any and all liabilities from the torts of itself, its agents or its servants". From the denial of the motion for judgment on the pleadings, defendant has appealed.

Appellant contends that its character as a charitable corporation is established by its charter which is not open to collateral attack, and the fact that it obtains revenue from the operation of this parking lot does not destroy its immunity from tort liability. Respondent contends: (1) That appellant's charter is not conclusive as to its charitable character and that she is entitled to offer evidence as to the nature of its business. (2) That even if appellant be found a charitable organization, the operation of a parking lot was a commercial venture wholly unconnected with its charity, to which immunity would not extend. Neither party questions the propriety of raising these issues by a motion for judgment on the pleadings and, therefore, we shall assume that they are properly before us.

Appellant was incorporated by Act No. 277 of the 1941 Acts of the General Assembly, 42 Stat. at L. p. 551. It was declared to be "an eleemosynary corporation, whose function shall be to promote the material, educational, agricultural and industrial interests of the State." Among other powers, the corporation was authorized to "hold Fairs and Exhibits on its Fair Grounds in the City of Columbia and elsewhere" and to "charge admission or dues to its members and the general public." In addition to the other functions enumerated in the Act, it was stated that said corporation "shall have such powers and enjoy such privileges as are conferred upon all existing eleemosynary corporations under the applicable law of South Carolina."

The general statute authorizing the incorporation of charitable and eleemosynary corporations is contained in Sections 12-751 to 12-765 of the 1952 Code. This statute authorizes the Secretary of State to issue certificates of incorporation to any church, college, school, lodge, society, company or other association having no capital stock divided into

shares, but holding or desiring to hold property in common for religious, educational, social, fraternal, charitable or eleemosynary purposes other than for the insurance of life, health, accident or property.

In *Sandel v. State,* 126 S. C. 1, 119 S. E. 776, 778, it was stated: "Eleemosynary corporations are those created for charitable and benevolent purposes." However, as we pointed out in *Johnson v. Spartanburg County Fair Association,* 210 S. C. 56, 41 S. E. (2d) 599, 604, the word "eleemosynary" is not a technical one of art or one which has "acquired a rigid meaning by judicial construction." We there expressed doubt as to whether the General Assembly intended to use the word "eleemosynary" in the foregoing general statute only in the sense of denoting a purpose to promote the welfare of mankind by works of charity. We stated that this word may have been used "in a broader sense to denote an unselfish purpose to advance the common good in any form or manner."

It is generally held that even if an institution be chartered as a charitable or eleemosynary corporation, this fact is not conclusive of its character, kind or purpose. In a tort action against such corporation its true nature may be shown from the manner in which it conducts its business as well as from its articles of incorporation, and on the trial of the case any competent evidence may be offered with respect to the actualities of its operations. Annotation 119 A. L. R. 1012. Indeed, in *White v. Central Dispensary & Emergency Hospital,* 69 App. D. C. 122, 99 F. (2d) 355, 360, 119 A. L. R. 1002, the Court said: "We know of but one court which has taken the position that the charter of a corporate defendant is conclusive against a plaintiff upon this question." The reference was to a Georgia decision. And as pointed out in *Rafferzeder v. Raleigh Fitkin-Paul Morgan Memorial Hospital,* 30 N. J. Super. 82, 103 A. (2d) 383, a claim by a corporation of immunity from tort liability is an affirmative defense.

In line with the general rule above stated, we have held in several cases that the charitable character of a corporation depends upon the facts and its charter is not conclusive.

In *Lindler v. Columbia Hospital,* 98 S. C. 25, 81 S. E. 512, although the defendant hospital was incorporated as an eleemosynary institution, the Court discussed at length the manner in which it was actually operated. In *Textile Hall Corporation v. Hill,* 215 S. C. 262, 54 S. E. (2d) 809, it was held that although the plaintiff was organized as an eleemosynary corporation, evidence was properly admitted showing that it was not operated for a charitable, scientific or educational purpose within the contemplation of certain provisions in the Constitution permitting institutions organized for these purposes to be exempt from taxation.

The question now under consideration was squarely decided adversely to appellant's contention in *Vermillion v. Women's College of Due West,* 104 S. C. 197, 88 S. E. 649. In that case a suit was brought against the College to recover damages for alleged wrongful death resulting from a fall of a balcony during an entertainment in the College auditorium. The trial Judge granted a nonsuit on the ground that defendant was a charitable corporation immune from tort liability. This Court, in reversing the order of nonsuit, held that the statements in the act of incorporation were insufficient to show that the College was a charitable institution and that it was incumbent upon the defendant to establish by evidence that it was an institution of this nature. It appeared from the charter of the College that it was established for the education of women under the jurisdiction of the Associate Reformed Presbyterian Synod. The Court said: "Defendant offered no evidence to prove its relation to the public, but relied upon certain statutes relative to its incorporation and association with the Associate Reformed Presbyterian Synod to show that it is a public charity. Careful consideration of these statutes show that, while they warrant an inference that defendant is a public

charity, they do not prove that fact beyond dispute, for they are not inconsistent with the view that defendant is a private corporation conducted for gain."

*Bean v. Piedmont Interstate Fair Association,* 4 Cir., 222 F. (2d) 227, 231, involved facts strikingly similar to those in the instant case. Bean brought an action against the Piedmont Interstate Fair Association to recover damages for injuries sustained in the explosion of fireworks at a fair conducted by the defendant at Spartanburg, South Carolina. Defendant moved to dismiss the action upon the ground that it was a charitable corporation organized under the general statute contained in Sections 12-751 to 12-765 of the 1952 Code and was, therefore, immune from tort liability. After reviewing our decisions, the Court held that the fact that the defendant was chartered as an eleemosynary corporation was not conclusive of its character, and the question of whether it was a charitable corporation must be determined from the facts. The Court said: "The contention that the Fair Association must be treated in this suit as a charitable corporation is not supported by the South Carolina decisions either as to the right of a private litigant to go behind the statements in its charter or act of incorporation, or as to the true nature of the Fair Association when the extrinsic facts are taken into consideration."

There is also merit in respondent's contention that even though appellant be found a corporation of a charitable nature, its immunity would not extend to a case where a tort has been committed in the course of noncharitable activities. While we have adhered to the general rule laid down in *Lindler v. Columbia Hospital, supra,* 98 S. C. 25, 81 S. E. 512, of full immunity of charitable institutions from the torts of their agents and servants, we have refrained from extending this immunity to a degree never contemplated when the rule was adopted. In *Bush v. Aiken Electric Cooperative, Inc.,* 226 S. C. 442, 85 S. E. (2d) 716, 719, we refused to grant immunity to a nonprofit rural electric cooperative. We there said: "The fact that a corporation

is not operated for profit is not controlling on the question of whether it is a charitable corporation". In *Peden v. Furman University*, 155 S. C. 1, 151 S. E. 907, 912, it was held that the defendant institution could be sued for damages resulting from the maintenance of a nuisance. The Court said: "In our opinion, an eleemosynary institution cannot use its property in such a way as to prevent others from enjoying the use of theirs, and, if it uses the property in such a manner as to become a nuisance, it makes itself liable for damages." And we do not think immunity should be extended to a situation where the activity out of which the alleged liability arose is primarily commercial in character and wholly unconnected with the charitable purpose for which the corporation was organized. This view is supported by the overwhelming weight of authority. Annotation 25 A. L. R. (2d) at page 130.

One of the leading cases on this question is *Gamble v. Vanderbilt University*, 138 Tenn. 616, 200 S. W. 510, 513, L. R. A. 1918C, 875. It involved an action for alleged wrongful death resulting from the falling of an elevator in an office building owned and operated by Vanderbilt University. The office building was located in the heart of the city of Nashville but was wholly disconnected from the educational work of the University. The Supreme Court of Tennessee, which follows the doctrine of full immunity of charitable organizations from tort liability, held that the action could be maintained against the University. It said:

"Although this building was lawfully operated by the university as an investment for the purpose of making profits to be used in its educational work, as held in *Vanderbilt University v. Cheney*, 116 Tenn. 259, 94 S. W. 90, yet it was in our judgment an enterprise sufficiently distinct and remote from the central activities of the charitable organization to make it inadvisable, from the viewpoint of public policy, to extend the exemption from liability thereto. Nor indeed can we believe that the welfare of the charity would be advanced or promoted by such extension, since there can be no

doubt that, if it be determined that such acts of negligence as are averred in the declaration concerning the management and operation of the elevator in an office building are without redress in law, there would be few patrons of so dangerous an establishment."

Among the more recent cases is *Blatt v. George H. Nettleton Home for Aged Women,* 365 Mo. 30, 275 S. W. (2d) 344. It was there held that the full immunity doctrine of Missouri could not be invoked as a defense to a suit to recover damages for injuries caused by the negligent maintenance of a stairway in an office building owned by defendant charitable corporation but operated as a commercial venture unconnected with its charitable activity.

In *Lichty v. Carbon County Agricultural Association,* D. C., 31 F. Supp. 809, 811, the Court said:

"Even if this Court were to hold defendant a 'charitable corporation' or an 'eleemosynary institution' and then for some reason find a general nonliability for negligent torts of servants, defendant would in the present case still not be entitled to that immunity. The accident in question happened at a corner of the grandstand on the fairgrounds, when the wire supporting a blind, described earlier in the opinion, dropped and injured plaintiff. The grandstand and the premises immediately surrounding it were not being used for, or incidental to, charter or charitable purposes at the time of the accident. That location was used in connection with horse and automobile races, in connection with vaudeville shows, and entertainments, but not in connection with or incidental to any charter purposes which could be called 'charitable' so as to grant defendant immunity for its servants' negligence."

Of course, what activity will or will not constitute the necessary connection with or direct relation to the charitable enterprise for which the particular charity was organized and is operated will depend upon the facts of each case. The instant case is before us only on the

pleadings. We do not know what the testimony will show and intimate no opinion as to whether the operation of a parking lot was an activity unrelated to the purpose for which appellant was organized.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and Moss, JJ., concur.