# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

John Doe, Appellant,

v.

Bishop of Charleston, a Corporation Sole, and The Bishop of the Diocese of Charleston, in his official capacity, Respondents.

Appellate Case No. 2020-000804

_____

Appeal From Charleston County
Bentley Price, Circuit Court Judge

_____

Opinion No. 6009
Heard June 15, 2023 – Filed August 2, 2023

_____

**AFFIRMED**

_____

Lawrence E. Richter, Jr., of The Richter Firm, LLC, of Mount Pleasant, and David K. Haller, of Haller Law Firm, of Charleston, both for Appellant.

Richard S. Dukes, Jr., of Turner Padget Graham & Laney, PA, of Charleston, and R. Hawthorne Barrett, of Turner Padget Graham & Laney, PA, of Columbia, both for Respondents.

_____

**WILLIAMS, C.J.:** John Doe (Appellant) filed this action against the Diocese of Charleston and the Bishop of the Diocese of Charleston (collectively, Respondents) alleging that as a child in 1970, he was sexually molested by two teachers at Sacred Heart Catholic School, a parochial school operated by the

Respondents. Appellant argues the circuit court erred in granting summary judgment based on the doctrine of charitable immunity. We affirm.

## FACTS/PROCEDURAL HISTORY

In August 2018, Appellant filed this action against Respondents, alleging that as a child around the ages of 12 to 14 (i.e., around 1969 to 1971), he was sexually molested by two teachers at Sacred Heart Catholic School. Appellant asserted claims for relief based on sexual abuse, outrage, negligence/gross negligence, breach of fiduciary duty, intentional infliction of emotional distress, fraudulent concealment, civil conspiracy, negligent retention or supervision, breach of contract, and breach of contract accompanied by a fraudulent act. Respondents filed multiple motions for summary judgment based upon the absence of any genuine issue of material fact regarding: (1) the defense of common law charitable immunity; (2) the defense of the statute of limitations; and (3) the defense of res judicata. Respondents additionally argued there was no genuine issue of material fact regarding the elements of each claim asserted by Appellant.

The circuit court heard oral argument on Respondents' dispositive motions based on charitable immunity, the statute of limitations, and res judicata pursuant to a 2007 class action settlement. The circuit court granted Respondents summary judgment based on the doctrine of charitable immunity. Appellant filed a Rule 59(e), SCRCP, motion requesting the circuit court alter or amend its order. The circuit court denied Appellant's Rule 59(e) motion and this appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in granting summary judgment to Respondents based on the doctrine of charitable immunity?

## STANDARD OF REVIEW

> When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

*S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 490, 732 S.E.2d 205, 208–09 (Ct. App. 2012). "In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party." *Id.* at 490, 732 S.E.2d at 209.

**LAW/ANALYSIS**

Appellant argues the circuit court misapplied the law of charitable immunity as it existed at the time of Appellant's injury when his right of action accrued. Appellant asserts that although his causes of action accrued no later than 1970, the circuit court erred in determining that the charitable immunity defense in 1970 provided a complete defense to the types of claims asserted in this case. Appellant argues the law regarding charitable immunity that controlled in 1970 was the same law that controlled in 1973, when a unanimous South Carolina Supreme Court explained in *Jeffcoat v. Caine*, 261 S.C. 75, 198 S.E.2d 258 (1973), that the doctrine of charitable immunity had never extended beyond tort claims based on "mere negligence." As such, Appellant contends the scope of the doctrine of charitable immunity at the time of the injury would not have afforded Respondents exemption from liability.

"This Court has consistently ruled that the abrogation of immunities defenses is to be applied prospectively only." *Hupman v. Erskine Coll*., 281 S.C. 43, 44, 314 S.E.2d 314, 315 (1984). To determine whether the doctrine applies, the triggering event is when the cause of action arose. *See Laughridge v. Parkinson*, 304 S.C. 51, 54, 403 S.E.2d 120, 121 (1991). In determining whether the doctrine of charitable immunity protected Respondents at the time of the alleged abuse, the analysis is twofold: (1) we must determine whether the immunity applied at the time of the alleged injury and (2) whether the corporation had, at the relevant time, a charitable rather than commercial purpose. *See Eiserhardt v. State Agric. & Mech. Soc'y of S.C.*, 235 S.C. 305, 311, 111 S.E.2d 568, 571 (1959); *Laughridge*, 304 S.C. at 54, 403 S.E.2d at 121. Because Appellant does not contest that Respondents are classified as a charitable organization, we are only tasked with determining whether the law of charitable immunity in 1970 provided exemption from liability. We find it did.

The doctrine of charitable immunity was first announced by the South Carolina Supreme Court in *Lindler v. Columbia Hospital of Richland County*, 98 S.C. 25, 27, 81 S.E. 512, 512 (1914). *Lindler* involved alleged injuries suffered by a paying patient in a hospital supported, in part, by charity. *Id.* at 27, 81 S.E. at 513. The court held, "A charitable corporation is not liable to injuries, resulting from the

negligent or tortious acts of a servant, in the course of his employment, where such corporation has exercised due care in his selection." *Id.* at 27, 81 S.E. at 512. The court explained its rationale stating "[t]he true ground upon which to rest the exemption from liability is that it would be against public policy to hold a charitable institution responsible for the negligence of its servants, selected with due care." *Id.* at 28, 81 S.E. at 513.

The doctrine of charitable immunity was discussed next in *Vermillion v. Woman's College of Due West*, 104 S.C. 197, 88 S.E. 649 (1916). The court in *Vermillion* considered whether a charitable entity was liable to a plaintiff who paid for entry to musical entertainment in its auditorium balcony, which subsequently fell. *Id.* at 199, 88 S.E. at 649. The defendant claimed exemption from liability on the ground that it was a public charity. *Id.* The court held that charitable immunity rendered charitable entities exempt from liability "for the torts of their superior officers and agents as well as for those of their servants or employ[ee]s, whether these be selected with or without due care." *Id.* at 202, 88 S.E. at 650. The court's rationale was that, in some instances, the rights of the individual must yield to the public good, and charities should not face ruin to compensate one or more individuals. *Id.*

In the case of *Caughman v. Columbia Y.M.C.A.*, 212 S.C. 337, 343–44, 47 S.E.2d 788, 790 (1948), the court held that a charitable organization or institution was not liable under the workers compensation act. In determining whether the immunity doctrine applied, the court stated "the question has been settled in this jurisdiction by adoption of the rule of full immunity of such institutions from the torts of their agents and servants." *Id.* at 343, 47 S.E.2d at 790.

In *Bush v. Aiken Electric Cooperative Inc.*, 226 S.C. 442, 449–50, 85 S.E.2d 716, 719–20 (1955), the court held that even though a rural, electric co-operative was a non-profit organization, it was not a charitable corporation immune from tort liability. The court stated "[u]nder our decisions institutions of this kind, on grounds of public policy, enjoy full immunity from tort liability" and cited *Lindler*, *Vermillion*, and *Caughman*. *Id.* at 448, 85 S.E.2d at 719. However, the *Bush* court reiterated the *Caughman* court, stating "the writer desires to repeat the observation made in *Caughman*[], to the effect that he seriously doubts the soundness of the rule giving charitable institutions immunity from tort liability." *Id.* at 451, 85 S.E.2d at 720.

In *Eiserhardt v. State Agricultural & Mechanical Society of South Carolina*, 235 S.C. at 311–12, 111 S.E.2d at 571–72, the court reaffirmed the defense of charitable immunity though it refused to extend immunity to activities outside the

scope of the charitable organization's mission.  The court found the charitable immunity doctrine inapplicable to a commercial venture conducted by a charitable corporation, stating, "we do not think immunity should be extended to a situation where the activity out of which the alleged liability arose is primarily commercial in character and wholly unconnected with the charitable purpose for which the corporation was organized.  This view is supported by the overwhelming weight of authority."  *Id.* at 312, 111 S.E.2d at 572.  However, the court reiterated the principle that South Carolina has "adhered to the general rule laid down in *Lindler*[], of full immunity of charitable institutions from the torts of their agents and servants," yet has also "refrained from extending this immunity to a degree never contemplated when the rule was adopted."  *Id.* at 311, 111 S.E.2d at 571.

Finally, in *Decker v. Bishop of Charleston*, 247 S.C. 317, 325, 147 S.E.2d 264, 268 (1966), the court applied charitable immunity to a tort claim against the Diocese and declared the church to be a true charity entitled to immunity from suit altogether.  More importantly, the *Decker* court went through an exhaustive analysis of the history of charitable immunity in South Carolina, stating:

> For us to withdraw immunity from charitable institutions
> at this time, against the existing background of decisions
> of the court would, in effect, be an act of judicial
> legislation in the field of public policy.  Whether some
> change in our rule is advisable is a question to be
> considered and resolved by the law making body.

*Id.*

Appellant relies almost exclusively on *Jeffcoat v. Caine* in arguing that charitable immunity did not apply to intentional torts at the time of the alleged abuse.  The court in *Jeffcoat* addressed whether the South Carolina Baptist Hospital could be liable for false imprisonment, an intentional tort.  *Id.* at 77–78, 198 S.E.2d at 259.  While the court declined to extend charitable immunity to exempt charitable organizations from liability for intentional torts, the court refused to overturn *Lindler*, *Vermillion*, and *Decker*.  *Id.* at 79–80, 198 S.E.2d at 260.  Appellant relies on the court's following statements:

> There can be no doubt that the decisions in *Lindler*,
> *Vermillion*, and *Decker* contain broad general
> expressions to the effect that charitable institutions are
> exempt from all tort liability.  However, the broad

> statement of a rule of complete exemption from tort
> liability was unnecessary to a decision in those cases, and
> the rule of charitable immunity has never been extended
> by our decisions beyond the facts in *Lindler*, *Vermillion*,
> and *Decker*. . . .  These decisions point up the fact that
> this Court, while adhering in the past to the rule that
> charitable institutions are exempt from liability for mere
> negligence, has in every instance refused to further
> extend the rule.  Therefore, the application of the
> immunity doctrine in a case of intentional tort is not
> required by precedent, nor, we conclude, by reason or
> justice.

*Id.*  Appellant's reliance on *Jeffcoat* is misplaced.  First, *Jeffcoat* was decided three years after the cause of action in this case arose and is therefore not an accurate representation of the law in 1970.

At its outset, the supreme court in *Lindler* held that charitable immunity in South Carolina meant that "a charitable corporation is not liable to injuries, resulting from the negligent or tortious acts of a servant, in the course of his employment."  98 S.C. at 27, 81 S.E. at 512.  Two years later, the *Vermillion* court echoed the court in *Lindler* and stated that law of charitable immunity rendered charitable entities exempt from liability "for the torts of their superior officers and agents as well as for those of their servants or employ[ee]s."  *Id.* at 202, 88 S.E. at 650.  Then, the court in *Caughman* stated that "the question [of charitable immunity] has been settled in this jurisdiction by adoption of the rule of *full immunity* of such institutions from the torts of their agents and servants."  *Id.* at 343, 47 S.E.2d at 790 (emphasis added).  Once more, the court in *Bush* stated that "[u]nder our decisions institutions of this kind, on grounds of public policy, *enjoy full immunity from tort liability*" and cited *Lindler*, *Vermillion*, and *Caughman*.  *Id.* at 448, 85 S.E.2d at 719 (emphasis added).

Then, in *Eiserhardt*, while the court refused to extend the immunity to ventures conducted by a charitable organization not aligned with its charitable purpose, it again reiterated that South Carolina has "adhered to the general rule laid down in *Lindler*[], of *full immunity* of charitable institutions from the torts of their agents and servants."  *Id.* at 311, 111 S.E.2d at 571 (emphasis added).  Most notably, four years before Appellant's alleged injury date, the court in *Decker* went through the history of charitable immunity precedent in South Carolina and stated that "withdraw[ing] immunity from charitable institutions at this time, against the

existing background of decisions of the court would, in effect, be an act of judicial legislation in the field of public policy." *Id.* at 325, 147 S.E.2d at 268. As such, the court believed judicial restraint was necessary to prevent the erosion of an immunity historically based on public policy, which only the legislature should control. *Id.*

*Jeffcoat* acknowledges that the case law prior to its decision contained "expressions to the effect that charitable institutions are exempt from *all tort liability.*" 261 S.C. at 79, 198 S.E.2d at 260 (emphasis added); *see also Vermillion*, 104 S.C. at 202, 88 S.E. at 650 ("The rule of total exemption is, perhaps, without exception, based upon grounds of public policy."); *Caughman*, 212 S.C. at 343, 47 S.E.2d at 790 ("[T]he question has been settled in this jurisdiction by adoption of the rule of full immunity of such institutions from the torts of their agents and servants."); *Bush*, 226 S.C. at 448, 85 S.E.2d at 719 ("Under our decisions institutions of this kind, on grounds of public policy, enjoy full immunity from tort liability."). As a result, there existed authority supporting Respondents' position that complete immunity existed for charitable institutions in 1970. No court in this state had, at that time, restricted the charitable immunity doctrine to such an extent as to hold Respondents liable for intentional torts.

Further, we find *Roe v. Bishop of Charleston*, No. 2:21-CV-20-RMG, 2022 WL 1570810, at *2 (D.S.C. May 18, 2022), *aff'd*, No. 22-1754 (4th Cir. May 17, 2023). which involves the same respondents as the instant case, instructive. *Roe* involved similar circumstances to our present case. The plaintiff alleged a priest of the Dioceses of Charleston, sometime between 1961–1966, sexually abused her. *Id.* at *1. She brought claims for (1) fraudulent concealment; (2) negligence/gross negligence/recklessness; (3) breach of fiduciary duty; (4) outrage/intentional infliction of emotional distress; (5) civil conspiracy; and (6) negligent retention or supervision. *Id.* The defendants filed various motions for summary judgment including one based on charitable immunity. *Id.* The District Court of South Carolina discussed South Carolina's history regarding the doctrine of charitable immunity including a discussion of *Lindler, Vermillion, Eiserhardt*, and *Decker*. *Id.* at *3–4. The district court found evidence that the defendants were a charitable organization during 1961–1966 and further found that the doctrine of charitable immunity would have barred the entirety of the plaintiff's claims. *Id.* at *3.

Based on Appellant's concession of Respondents' charitable designation at the time of the alleged injury and the precedent at the time demonstrating support of complete immunity, we hold the circuit court properly granted summary judgment to Respondents on the basis of charitable immunity.

Accordingly, the order of the circuit court is

**AFFIRMED.**

**GEATHERS and VERDIN, JJ., concur.**